DOUGLAS ODOLECKI, PLAINTIFF-APPELLANT, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, A CORPORATION OF THE STATE OF CONNECTICUT, DEFENDANT-RESPONDENT.

Argued March 3, 1970—Decided April 20, 1970.

Mr. *Lawrence S. Grossman* argued the cause for plaintiff-appellant (*Messrs. Burton, Quackenboss & Axelrod*, attorneys; *Mr. Lawrence S. Grossman* on the brief).

Mr. *James F. Norton* argued the cause for defendant-respondent (*Messrs. Lane & Evans*, attorneys; *Mr. James F. Norton* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This case concerns the question of coverage under the omnibus clause of an automobile liability insurance policy. The policy was issued by the defendant, Hart-

ford Accident & Indemnity Company (Hartford) to Mrs. Kathryn Zylka, and covered her automobile which was involved in a collision on July 7, 1964. The omnibus clause was of standard form and provided in pertinent part that coverage under the policy was extended to the named insured, her spouse, and "any person while using the automobile * * * provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

The facts are not in material dispute. Mrs. Zylka, the owner of the insured vehicle, gave her teenage son, Michael, general permission to use the car when he returned home from college for his summer vacation. She also told him not to let anyone else drive the car. This admonition was repeated on several occasions when he used the car. On the night of July 7, 1964, Michael was using the car for a social visit to a neighbor's house. While there he permitted his friend, the plaintiff, Douglas Odolecki, to borrow the car in order that the latter might pick up his girl friend. On his way to a hospital where the girl worked, Odolecki was involved in an accident with another car which resulted in the filing of several personal injury actions against him.

After receiving notice of the accident, the defendant-insurer informed the plaintiff that he was not covered by the policy issued to Mrs. Zylka since he was not operating the vehicle with the "permission" of the named insured or her spouse as required by the policy. The plaintiff filed the present action to have himself declared an additional insured. Sitting without a jury, the trial court held that the Zylka policy did not cover the plaintiff as an additional insured because Mrs. Zylka had never given him permission to use the car, because she had expressly prohibited her son from giving permission to others to use the car, and because the use of the car was not within the use granted by Mrs. Zylka to her son. In denying plaintiff relief, the trial judge relied principally on this Court's decision in *Baesler v. Globe Indemnity Co.*, 33 *N. J.* 148 (1960). Plain-

tiff appealed to the Appellate Division, and pending argument there, we granted certification on our own motion.

*Baesler,* upon which the trial court relied, is virtually identical with the present case. There, the named insured bought a car for the exclusive use of his nephew with the stipulation that the car not be used by others. Despite this admonition, the nephew permitted a friend to use the automobile for a social engagement, and while the friend was driving, he had an accident in which his passenger was injured. The passenger recovered a judgment for personal injuries against the friend-driver, and the latter, claiming to be an additional insured, sued the insurer of the named insured to recover the amount of the judgment. In a four to three decision, this Court held that the plaintiff was not covered by the policy which the defendant had issued. The Court noted the general rule that, ordinarily, a permittee is not authorized to allow another to use an insured vehicle on the basis of his own permission to use it and that therefore there could be no coverage under the standard omnibus clause. *Id.,* at 151. Since we adhered to this rule at that time (see *Cronan v. Travelers Indemnity Co.,* 126 *N. J. L.* 56 (E. & A. 1941)), it followed, *a fortiori,* that when there was an express prohibition by the named insured, and no other countervailing factor, the second permittee could not claim a greater right than he could in the absence of such a prohibition. The plaintiff concedes that under *Baesler* he is not entitled to qualify as an additional insured, but he argues that our decisions since *Baesler* have eroded the holding in that case to the point where it no longer represents the law of this state. The validity of this contention depends upon an analysis of these post-*Baesler* decisions.

In the term of court following *Baesler,* we decided *Matits v. Nationwide Mutual Ins. Co.,* 33 *N. J.* 488 (1960). There we dealt with the related question of whether the original permittee was an additional insured when she substantially deviated from the scope of the named insured's permission. In that case the husband of the named insured lent his

wife's car to a neighbor so that the latter could visit her sick mother in a nearby town. After the visit, the permittee drove in a direction away from the named insured's home and alternately visited two bars over a period of several hours. On the way home, she was involved in a collision with another car.

We were called upon to decide whether the permittee's deviation vitiated the named insured's initial permission so as to deprive her of coverage under the standard omnibus clause of the policy issued by the defendant insurer. The law of New Jersey pertaining to coverage when a permittee deviated from the scope of permission was then unclear. See *Rikowski v. Fidelity & Casualty Co.*, 117 N. J. L. 407 (E. & A. 1937). Other jurisdictions had adopted one of three views. The first is the liberal or "initial permission" rule which allows coverage if a person has permission to use the automobile irrespective of any deviations from the scope of permission so long as it remains in his possession. The second view, the moderate or "minor deviation" rule, allows coverage only where the deviation from the scope of the permissive use does not constitute a gross violation. Finally, the strict or "conversion" rule denies coverage for *any* deviation from the time, place, or purpose specified. 33 N. J., at 492–493. For a discussion of these rules, see generally 7 Appleman, *Insurance Law and Practice,* §§ 4366, 4367, 4368, and cases cited therein.

In *Matits,* we adopted the initial permission rule. It was our view that the minor deviation and conversion rules, which made coverage turn on the scope of permission given in the first instance, rendered coverage uncertain, fostered unnecessary litigation, and did not comport with New Jersey's legislative policy of assuring an available fund for the innocent victims of automobile accidents. See *Motor Vehicle Security-Responsibility Law, N. J. S. A.* 39:6–23 to 60; *Unsatisfied Claim and Judgment Fund Law, N. J. S. A.* 39:6–61 to 91; *Motor Vehicle Liability Security Fund Act, N. J. S. A.* 39:6–92 to 104. Accordingly, we held that if

a person is given permission to use a motor vehicle in the first instance, *any* subsequent use short of an unlawful taking while it remains in his possession, is a permissive use within the standard omnibus clause in an automobile liability insurance policy regardless of any restrictions given by the named insured. Therefore, the permittee was an additional insured under the policy issued by the defendant insurer. 33 *N. J.* 496–497.

In a dissenting opinion, Justice Hall contended that the minor deviation rule was the only sound approach to the problem. He expressed the belief, however, that the Court's adoption of the initial permission rule undermined the holding of *Baesler* since it rendered irrelevant any actions by a permittee subsequent to the grant of original permission. He reasoned that the majority's holding made it impossible for an insured to restrict a grant of permission, and therefore that the result in *Baesler* was irreconcilable with that in *Matits.*

Our holding in *Matits* has since been reaffirmed in *Small v. Schuncke,*[1] 42 *N. J.* 407 (1964) and *Selected Risks Insurance Co. v. Zullo,* 48 *N. J.* 362 (1966). Now we must decide whether initial permission is unrestrictable in terms of second permittees as well as in terms of scope of deviations.

We had already indicated in *Baesler* that in certain circumstances a prohibition of a loan to a second permittee could be ineffective regarding insurance coverage. There we noted that if, for example, a father gave his son the use of the family car for a social engagement and the son turned over the wheel to a fellow occupant despite his father's admonitions to the contrary, there might be coverage. 33 *N. J.,* at 153–154. This *dictum* later became our holding in *Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co. of*

---

[1]Interestingly, *Small* involved a second permittee as well as a deviation from the scope of permission. However, the insurer conceded that if the first permittee was covered under the omnibus clause at the time of collision, the second permittee was also covered. 42 *N. J.* at 412.

*N. Y.,* 33 *N. J.* 507 (1960), decided the same day as *Matits.* There the named insured lent her car to an employee for the purpose of driving several customers on a business inspection. The employee was specifically instructed not to let anyone else drive the car. While returning from the inspection the employee allowed a passenger to drive and the car was involved in an accident. We held that the passenger-second permittee was covered since the car was being used for the purpose permitted by the named insured. 33 *N. J.,* at 524. Thus, it was possible for a second permittee to qualify as an additional insured notwithstanding the original permittee's violation of the named insured's instructions.

In *Matits,* and the subsequent cases in which we continued to follow the initial permission rule, we emphasized the importance of minimizing litigation of omnibus clause coverage. We were concerned with the continuing problem of determining factually the scope of permission given by the named insured. In order to alleviate the problem we adopted the rule that once permission was given to use a car on the highways, the person giving permission could not bar coverage by restricting the time, place, or purpose for which the car could be used. Clearly, the same kind of litigation results from a rule which inquires into the named insured's permission regarding the use of the car by persons other than his initial permittee. The question again depends upon the scope of the permission. Instead of what the named insured said regarding the time, place, and purpose of the permissive use, a court must examine what was said regarding other drivers. This kind of inquiry is precisely what we sought to avoid in *Matits.*

Thus, *Baesler* is not consistent with our announced policy of limiting litigation which turns on petty factual distinctions, particularly where these distinctions bear so little relationship to the subject of insurance coverage in the named insured's own mind. A named insured's admonitions to his permittee regarding the use of the vehicle by other drivers is rarely if ever intended to restrict the scope of

insurance coverage. Moreover, as Chief Justice Weintraub pointed out in his dissent in *Baesler*: "A named insured untutored in law and fearful that his consent might lead to his own liability for damages in excess of the policy limits (indeed by statute in some jurisdictions he would be so liable) may well be tempted to invent a claim that he prohibited others to drive or to convert a precatory request into a binding prohibition." 33 *N. J.*, at 159. We add that the fear of insurance policy cancellations might well have the same effect.

A second and more important policy is that of assuring that all persons wrongfully injured have financially responsible persons to look to for damages. *Matits v. Nationwide Mutual Ins. Co., supra,* 33 *N. J.*, at 495–496. In other words, a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured. The Legislature's desire to implement this policy is demonstrated by our financial responsibility laws cited above. In *Selected Risks Ins. Co. v. Zullo, supra,* we discussed the importance of these statutes and held that an insurer could not depart from the omnibus coverage described in *N. J. S. A.* 39:6–46(a) which contained substantially the same language we construed in *Matits. Id.* 48 *N. J.* 369. Thus, insurers were required to draw policies which conformed with the initial permission rule.

Although the above policy considerations would seem to dictate a departure from *Baesler,* we are urged that the language of the omnibus clause precludes coverage for a prohibited second permittee. More specifically, defendant argues that the words "provided the actual use of the automobile is by the named insured * * * or with [her] permission" could not include use by Odolecki since Mrs. Zylka had told her son not to let anyone else drive the car. We fail, however, to see the distinction between a case where a first permittee exceeds the scope of permission in terms of time, place, or purpose, and a case where he

exceeds the scope of permission in terms of use of the vehicle by another. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is as irrelevant in the one case as in the other. And as *Matits* and its progeny indicate restrictions are irrelevant in scope cases. The spurious nature of this distinction was pointed out by Cohen & Cohen in their article, "Automobile Liability Insurance: Public Policy and the Omnibus Clause in New Jersey," 15 *Rutgers L. Rev.* 155, 168 (1961). We think that once the initial permission has been given by the named insured coverage is fixed, barring theft or the like. *Matits v. Nationwide Mutual Ins. Co., supra,* 33 *N. J.,* at 496–497. There is no claim of such an unlawful taking in the present case.

Accordingly, we hold that plaintiff was an additional insured within the terms of the policy issued to Mrs. Zylka by the defendant insurer. *Baesler v. Globe Indemnity Co., supra,* is no longer the law of this state.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.