135 N.J. Super. 362 (1975)
343 A.2d 473
MOTOR CLUB FIRE & CASUALTY CO., PLAINTIFF-RESPONDENT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-APPELLANT, AND FRANCES SCIBETTA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1975.
Decided July 15, 1975.
*364 Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Richard D. Catenacci argued the cause for appellant New Jersey Manufacturers Insurance Company (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Jerome S. Lieb argued the cause for respondent Motor Club Fire & Casualty Co. (Messrs. Lieb, Teich & Berlin, attorneys).
Mr. Judson L. Levin argued the cause for respondent Frances Scibetta.
PER CURIAM.
New Jersey Manufacturers Insurance Company (NJM) appeals from a judgment declaring that the insurance policy which it issued to Jennie V. Leonard affords primary coverage for an accident which occurred while Nicholas Scibetta (Nicholas) was driving Mrs. Leonard's automobile. At the time Nicholas owned an automobile which was insured by plaintiff, Motor Club Fire & Casualty Company (MCA), whose policy covered Nicholas while operating *365 another vehicle. The principal questions sought to be determined in the action commenced by MCA were whether the NJM policy afforded coverage for the accident and, if so, which policy afforded primary coverage. The problem was created when Nicholas, who had been invited into the car as a passenger, took over the operation of the car and drove off after Mrs. Leonard was frightened into leaving the car by Nicholas' unusual behavior.
There is no substantial dispute of fact. Mrs. Leonard testified in the nonjury trial below, and her prior deposition, as well as that of Nicholas and Mrs. Scibetta, were placed in evidence.
On August 26, 1971, Mrs. Jennie Leonard, aged 63, was a neighbor of the Scibettas, whose son Nicholas was experiencing a serious emotional disorder. Nicholas was scheduled to see a psychiatrist that night. Mrs. Leonard was going to drive him there and decided that they should look for the office in the afternoon so that she would know her way. Mrs. Leonard was driving her car, and Nicholas and his mother, who went along, were in the front seat. Mrs. Scibetta was seated between Mrs. Leonard and Nicholas.
On the trip Mrs. Leonard made a wrong turn. She stopped for directions and then returned to the correct road. Suddenly Nicholas, in an agitated state, seized the steering wheel and started to climb over his mother toward the driver's seat. According to Mrs. Leonard's testimony he said, "Get out of this car, Jennie, get out of this car." Mrs. Leonard and Mrs. Scibetta both testified that they became very frightened. Mrs. Leonard testified, "It was like a shock. I never expected it, really." She testified that she put on the emergency brake and got out of the car because she was frightened. Mrs. Scibetta testified that she and Mrs. Leonard were "stunned" and "scared" and that Mrs. Leonard said, "Oh, my God," and stopped the car. Mrs. Scibetta kept telling Nicholas to stop, but he paid no attention to her. After getting out of the car, leaving her pocketbook behind and the motor running, Mrs. Leonard just stood there; she was *366 "stunned." She testified that Nicholas drove off and left her standing there. It all happened very fast.
Shortly after driving off Nicholas was involved in an accident. He struck another vehicle and a building. Mrs. Scibetta was injured and commenced an action against Nicholas. Suit papers were forwarded to NJM with the request that it defend Nicholas. NJM disclaimed coverage on the ground that Nicholas was not operating the vehicle with the permission of its insured. Thereafter, this action was instituted.[1]
The trial judge held that the NJM policy afforded coverage for the accident while the car was operated by Nicholas.[2] His rationale was as follows: (1) the NJM policy (as well as the MCA policy) included as "persons insured" the named insured (Mrs. Leonard), residents of her household and "any other person using" the Leonard vehicle "with the permission of the named insured, provided the actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission"; (2) by the terms of the policy NJM agreed to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * arising out of the ownership, maintenance or use of *367 the * * * automobile * * *"; (3) N.J.S.A. 39:6-46(a) and N.J.S.A. 39:6-48(b) require that an insurance policy insure "any other person using * * * any such motor vehicle with the express or implied consent of the insured, against loss * * * for injury * * * growing out of the maintenance, use or operation of the motor vehicle * * *"; (4) although "his [Nicholas'] use later on was converted or extended * * * into an operation * * * his use, nevertheless, continued." Accordingly, it was held that by operation of law the NJM policy was required to cover the accident resulting from the "continued use" of the vehicle by Nicholas after he became the operator of the vehicle.
Whether Nicholas was operating the vehicle with the permission of Mrs. Leonard was dealt with by the trial judge in the following manner: Mrs. Leonard knew that Nicholas' mental condition was "something less than stable," and when she got out of the car she "knew that Nicholas Scibetta was attempting to place himself in the driver's seat behind the steering wheel." The trial judge further reasoned that the driver of a vehicle is presumed in law to be operating it as the agent of the owner; that the owner must rebut that presumption, and that Mrs. Leonard did not carry the burden of persuasion that Nicholas was not driving the vehicle with her permission. The trial judge specifically stated:
I have not decided that he was operating the vehicle with permission * * *.
I have not found that she gave Nicholas Scibetta an implied consent or that he had the implied consent to operate. I haven't said that and I make no finding on the point. I said that alternative to my main decision, which went on a construction of the policy, I find that his operation was presumed in the law to be as her agent and as her agent, therefore, with her permission. I said further that because of that, you [NJM] have the burden of persuading the trier of fact that such operation was not as an agent or with implied consent. I further said you [NJM] failed to satisfy or sustain the burden.
In this case we have no difficulty in concluding that Nicholas did not have permission to operate the Leonard car. *368 To the extent that the trial judge left the issue undecided, we exercise our authority to make a finding of fact on this issue. R. 2:10-5; Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 106 (1969). To the extent that the trial judge determined that Nicholas' permission to use the car had not been disproved, giving effect to the presumption of agency, we disagree. The presumption of agency between owner and driver (Tischler v. Steinholtz, 99 N.J.L. 149, 152 (E. & A. 1923); Mahan v. Walker, 97 N.J.L. 304, 306 (E. & A. 1922)) has been considerably weakened by the low place now accorded to presumptions of fact, once contrary evidence has been introduced. Evid. R. 14; Harvey v. Craw, 110 N.J. Super. 68 (App. Div. 1970), certif. den. 56 N.J. 479 (1970). Cf. In re Weeks, 29 N.J. Super. 533 (App. Div. 1954). There the court noted that a presumption disappears as a factor in the case when substantial evidence of contradiction or explanation has been adduced. Id. at 536. Evid. R. 14 does not require "substantial" evidence  merely "evidence to the contrary of a presumed fact," unless reasonable minds could not differ. See State v. Humphreys, 54 N.J. 406, 414-416 (1969). Here it is clear that Nicholas was not driving the car as the agent of Mrs. Leonard. Harvey v. Craw, supra; cf. Clemens v. O'Brien, 85 N.J. Super. 404 (App. Div. 1964).
Mrs. Leonard testified that never before had she given permission to Nicholas to drive the car. She was frightened into leaving her car. Even if she had realized that Nicholas intended to take over the operation of the car, she left under duress and did not voluntarily consent to his operation. While Mrs. Leonard had not prohibited the operation of the car by Nicholas, we conclude that the "willing mind of the permitter" (State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co., 62 N.J. 155, 168 (1973)), is not present and cannot be inferred in this case.
The substantial issue in the case is whether the NJM policy affords coverage when Nicholas' initial use of the car as a passenger was with permission but was followed by his *369 operation of the car without the owner's permission, express or implied.
In Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966), as earlier in Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496 (1960), it was held that policies insuring motor vehicles registered in New Jersey are deemed to contain the broad omnibus clause required by N.J.S.A. 39:6-46(a). This statute provides that the policy shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured * * *." N.J.S.A. 39:6-48(b) provides: "The policy * * * shall not conflict with the provisions of this act * * *." In Matits, supra, the court held that:
* * * if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile insurance policy. [33 N.J. at 496-497]
Selected Risks Ins. Co. v. Zullo and Matits, supra, both held that the policies afforded coverage despite deviations from the intended use of the vehicle, where permission had been given initially to use and drive the vehicle. The deviation in Zullo was a trip for a soda, the driver being a minor, and in Matits it was drinking at several taverns before returning the car.
Indem. Ins. Co. of North America v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507 (1960), was decided on the same date as Matits, supra. There the court held that a policy covered an accident which occurred while the car was devoted to its intended use, a sales-promotion trip to a brewery, although it was driven by a guest in violation of instructions to the initial driver. The car had been entrusted to an employee of a corporation in which the car's owner had an interest. The court there noted that the omnibus clause in question "says nothing about operation of the vehicle," *370 operation being the "manipulation of the car's controls" or, simply put, driving the car. Id. at 513. The clause afforded coverage for "any person while using the automobile * * * provided the actual use is with [the named Insured's] permission." Id. Ruling that an automobile can be used "by one riding in it," although another is the driver, and that the use of an auto is broader than its mere operation, the court held that the coverage applied since the vehicle was still being used for the purpose of the trip, although a passenger, with consent of the initial driver, but contrary to his instructions, had taken over the operation of the vehicle. Id. Similarly, in Odolecki v. Hartford Accident & Indem. Co., 55 N.J. 542 (1970), it was held that coverage is afforded for an accident occurring while the car was driven by someone other than the first permittee (there, a son), despite instructions from the owner to the first permittee prohibiting its use or operation by another. The first permittee, the son, had given his friend permission to drive the car. In the course of its opinion the court overruled the more restrictive holding of Baesler v. Globe Indem. Co., 33 N.J. 148 (1960), in which a prohibition against the use by anyone other than the first permittee was given effect. The court in Odolecki noted that the purpose of the statutorily required omnibus clause is to protect the public as well as the named and additional insured. Odolecki, supra, 55 N.J. at 549; see State Farm Mut. Ins. Co. v. Zurich Am. Ins. Co., supra, 62 N.J. at 180.
In Odolecki and Indem. Ins. Co. of North America v. Metropolitan Cas. Ins. Co. of New York, supra, the omnibus clause included "any person while using the automobile * * * provided the actual use of the automobile is with * * * permission" of the named insured. In the latter case the court enunciated the rule that "coverage under an omnibus clause like the one before us depends upon whether the use, as distinct from the operation, of the automobile is a permitted one." Id., 33 N.J. at 514-515.
*371 In the case at hand, the clause reads:
* * * any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *.
This language was intended to preclude coverage of a vehicle which is operated without permission of the owner. It is not a violation of N.J.S.A. 39:6-46(a) to exclude coverage for a person who seizes and operates a vehicle without express or implied permission, notwithstanding that his initial use as a passenger was authorized. N.J.S.A. 39:6-26(c) exempts owners from the requirements as to security or suspension, if their vehicles are operated without permission, express or implied.
In the case at hand, where the operation followed a coerced ouster of the owner from the automobile, we conclude that the initial use was superseded by an unauthorized seizure and operation. We do not find it unreasonable to permit an insurance policy to exclude coverage where a person, allowed to use a vehicle as a passenger, has ousted its owner from the vehicle and has taken over its operation without permission, express or implied.
Accordingly, we reverse the judgment insofar as it determined that the NJM policy afforded coverage and that NJM was required to undertake the defense and reimburse MCA for expenses incurred by MCA in its defense of the underlying action.
NOTES
[1] The complaint asserted that if the Leonard motor vehicle was operated by Nicholas without permission of its owner, the MCA policy also would not afford coverage to Nicholas. However, this position was abandoned at trial. Counsel for MCA conceded that Nicholas was covered by the MCA policy. The MCA policy provides that the named insured (Nicholas) is an insured person with respect to a nonowned automobile. No conditions are attached to that clause; specifically, such insurance is not conditioned on the named insured having permission to operate a non-owned vehicle.
[2] The judgment entered by the court declared that the NJM policy issued to Mrs. Leonard affords primary coverage to Nicholas for the claim of his mother arising out of the automobile accident of August 26 up to the policy limit; that secondary coverage is afforded by the MCA policy issued to Nicholas up to its policy limit; that NJM must furnish the defense to Nicholas in the action pending against him arising out of the accident, and that NJM must reimburse MCA for its cost incurred theretofore in furnishing a defense to Nicholas in the aforesaid action.