MOTOR CLUB FIRE & CASUALTY COMPANY, PLAINTIFF-RESPONDENT & CROSS-APPELLANT, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND FRANCES SCIBETTA, DEFENDANT-APPELLANT.

Argued February 23, 1977—Decided June 13, 1977.

426

Mr. *Judson L. Levin* argued the cause for appellant Frances Scibetta.

Mr. *Jerome S. Lieb* argued the cause for respondent and cross-appellant Motor Club Fire & Casualty Company (*Messrs. Lieb, Teich and Berlin,* attorneys).

Mr. *Richard D. Catenacci* argued the cause for respondent New Jersey Manufacturers Insurance Company (*Messrs. McElroy, Connell, Foley & Geiser,* attorneys).

The opinion of the court was delivered by

CARTON, P. J. A. D., Temporarily Assigned. This matter, which comes before us for the second time, involves a question of coverage under an omnibus clause of an automobile liability insurance policy. As a result of an evenly divided vote, we affirmed the Appellate Division's judgment that the policy provided no coverage for Nicholas Scibetta, the driver of the vehicle. 135 *N. J. Super.* 362 (App. Div. 1975), aff'd by equally divided court, 71 *N. J.* 352 (1976). In order to resolve this important issue, we granted rehearing, 74 *N. J.* 256 (1976).

The salient facts, although unusual, are clear and essentially undisputed.

Jennie Leonard, owner of a vehicle insured by New Jersey Manufacturers Insurance Company ("New Jersey Manufacturers"), lived in West Caldwell next door to the Scibetta family. Mr. and Mrs. Scibetta lived with their son Nick, a 37-year-old toolmaker, who was suffering from an emotional disorder apparently brought on by the news that his younger brother had contracted Hodgkin's disease. Accordingly, Nick had taken a leave of absence from work. He also owned an automobile, insured by Motor Club Fire and Casualty Company ("Motor Club"). That policy covered Nick as driver of his car or any other automobile.

On August 26, 1971, Jennie Leonard spent the afternoon at the Scibetta residence with Nick and his mother. Mrs. Leonard and Mrs. Scibetta were concerned about Nick's mental health. Mrs. Leonard suggested that Nick be taken to a doctor, and she volunteered to help arrange an appointment for Nick with a psychiatrist. After making several fruitless telephone calls, Mrs. Leonard made a 6:00 P.M. appointment for Nick with a Dr. Cuzzo in West Caldwell.

Although Dr. Cuzzo's office was located in the same town as the Leonard and Scibetta residences, Mrs. Leonard was unfamiliar with the exact location of the doctor's office, and she therefore decided to make a "trial run" to his

office at about 3 :00 P.M. Mrs. Scibetta endorsed this plan, and agreed to accompany Mrs. Leonard. Although Nick was initially reluctant to go, eventually he was persuaded to join the two women. Nick offered to drive the women in his car, but because Mrs. Leonard's car was more conveniently positioned in the Scibetta driveway, they took her car. Mrs. Leonard testified that had Nick's vehicle been in the more convenient location, he would have driven. Mrs. Leonard drove, with Mrs. Scibetta seated next to her, and Nick positioned in the right front seat by the passenger's window.

After becoming lost and asking for directions, Mrs. Leonard stopped at an angled intersection on Bloomfield Avenue and waited for a pause in the traffic. Suddenly Nick began climbing across the front, over his mother. He grabbed the steering wheel, telling Mrs. Leonard to get out of the car. Mrs. Leonard, stunned and frightened by Nick's actions and expression, pressed down the emergency brake and exited from the driver's side onto a traffic island in the street. Mrs. Leonard testified at trial: "I knew I had to get out * * * [b]ecause he was practically in the seat there and I knew he had the wheel." Mrs. Scibetta unsuccessfully pleaded with her son to desist. Nick succeeded in crawling across the front seat, took the wheel, and drove onto Bloomfield Avenue. Almost immediately, the automobile struck the rear of another car, went out of control, and crashed into an office building. Mrs. Scibetta was severely injured.

Motor Club, Nick's insurer, instituted an action for a declaratory judgment on the issue of primary coverage, naming Nick, his mother and father, Jennie Leonard, New Jersey Manufacturers, the owner of the vehicle struck by the Leonard car, and the owners of the office building as defendants. In the action Motor Club sought to determine whether Nick was covered by either Motor Club or New Jersey Manufacturers. If he was covered by both companies, it sought a judgment declaring New Jersey Manufacturers primarily responsible. Mrs. Scibetta answered that Nick was

driving with Jennie Leonard's permission and that, as a result, New Jersey Manufacturers was primarily liable. New Jersey Manufacturers denied that the Leonard policy covered Nick because his use of the vehicle was "tantamount to theft," and therefore without Mrs. Leonard's permission.

■ The New Jersey Manufacturers policy issued to Mrs. Leonard provided, under the heading, "PART 1 — LIABILITY," sub-heading, "Coverage A — Bodily Injury Liability; Coverage B — Property Damage Liability," coverage for bodily injury "sustained by any person * * * arising out of the ownership, maintenance or use of the owned vehicle * * *." Under the sub-heading, "Persons Insured," the policy reads:

The following are insureds under Part 1:
(a) with respect to the owned automobile,
    (1) the named insured and any resident of the same household,
    (2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,
    * * *.

As will be discussed in detail later in this opinion, this Court has held that every automobile liability policy offered as proof of financial responsibility must have coverage no more restricted than that mandated in the Motor Vehicle Security-Responsibility Law, *N. J. S. A.* 39 :6–46, which provides:

Liability policies; requirements
   A motor vehicle liability policy furnished as proof of financial responsibility as provided herein shall be a policy of liability insurance issued by an insurance carrier authorized to transact business in this State or, in the case of a person not eligible for insurance under the automobile Assigned Risk Plan, by an eligible surplus lines insurer to the person therein named as insured, or in the case of a nonresident, by an insurance carrier authorized to transact business in any of the states or provinces hereinafter stated. The policy shall:

(a) Designate, by explicit description or appropriate reference, all motor vehicles with respect to which coverage is intended to be granted thereby, and insure the insured named therein and *any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured*, against loss from the 'liability imposed upon the insured or other person by law, for injury to or the death of a person, other than a person who is covered, as respects the injury or death, by any workmen's compensation law, or damage to property, except property of others in charge of the insured or the insured's employees, *growing out of the maintenance, use or operation of the motor vehicle* in the United States of America ;
* * *. (Emphasis added)

As interpreted by the trial court, the New Jersey Manufacturers policy issued to Mrs. Leonard and the applicable statute rendered New Jersey Manufacturers primarily liable. The court reasoned that, at the outset of the journey, Nick was a passenger/user of the vehicle with Mrs. Leonard's permission and that Nick's use continued until the accident, although "converted or extended" into actual operation of the vehicle. The trial court did not expressly rule on the assertion that Mrs. Leonard gave Nick her permission to operate the car but found liability on the theory of agency.

The Appellate Division reversed the trial court's determination that the New Jersey Manufacturers policy afforded primary coverage to Nick as operator of Mrs. Leonard's car. The Appellate Division viewed the "substantial issue" in the case to be whether the New Jersey Manufacturers policy covered Nick when his initial use of the car as a passenger was permitted, but was followed by his operation of the car without the owner's express permission. 135 *N. J. Super.* at 368–69. The court reviewed cases construing "use" as distinct from "operation," and concluded that New Jersey Manufacturers' omnibus clause, which was framed to preclude coverage of the insured vehicle when driven without the owner's permission, did not illegally depart from the statutorily required omnibus clause. Describing Nick's actions as effecting "a coerced ouster of the owner from the automobile," 135 *N. J. Super.* at 371, the court, exercising its original jurisdiction,

found that Nick did not have Mrs. Leonard's permission to operate the car, and concluded that "the initial use was superseded by an unauthorized seizure and operation." *Id.* The Appellate Division ruled that it was not "unreasonable" under the statute and the policy language to permit New Jersey Manufacturers to deny coverage under the Leonard policy for the injuries resulting from Nick's operation of the Leonard vehicle. *Id.*

The meaning and scope of the coverage provisions in Mrs. Leonard's policy must be considered in light of our courts' expansive view of the coverage provided by the standard omnibus clause. The leading case is *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488 (1960), where this Court, after reviewing various approaches taken by other jurisdictions for determining the coverage available to persons other than the named insured under such a provision, adopted the broadest and most liberal approach, known as the "initial permission rule." The Court formulated this rule in these words:

* * * [I]f a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy. * * * [33 *N. J.* at 496–97]

In *Small v. Schuncke*, 42 *N. J.* 407 (1964), the Court underscored the broad sweep of the coverage which its interpretation had attributed to the omnibus clause. That opinion reduced the problem of coverage available to persons other than the named insured to two fact issues: (1) whether permission had been given to use the car, and (2) whether the use constituted "theft or the like." 42 *N. J.* at 413. The Court took pains in *Schuncke* to reject the Appellate Division's view that the issue of coverage should depend on the purpose for which the car was given by the owner to the permittee:

\* \* \* We believe that this construction of the word "use" is too narrow. Whether permission to use is granted for a purpose which will benefit the owner, the permittee, or both is immaterial under the initial permission rule, which is not concerned with the scope or use for which permission is granted. \* \* \* [42 *N. J.* at 413-14]

In *Odolecki v. Hartford Accident & Indemnity Co.*, 55 *N. J.* 542 (1970), the Court reviewed the circumstances which led it to adopt the initial permission rule and reaffirmed its approval of the *Matits* decision, saying:

\* \* \* It was our view that the minor deviation and conversion rules, which made coverage turn on the scope of permission given in the first instance, rendered coverage uncertain, fostered unnecessary litigation, and did not comport with New Jersey's legislative policy of assuring an available fund for the innocent victims of automobile accidents. See *Motor Vehicle Security-Responsibility Law*, *N. J. S. A.* 39:6-23 to 60; *Unsatisfied Claim and Judgment Fund Law*, *N. J. S. A.* 39:6-61 to 91; *Motor Vehicle Liability Security Fund Act*, *N. J. S. A.* 39:6-92 to 104. \* \* \* [55 *N. J.* at 546]

In emphasizing the importance of minimizing litigation concerning omnibus coverage, the Court in *Odolecki* particularly decried the recurrence of intricate factual inquiries concerning the scope of permission given by the named insured. Additionally underlying the Court's entire discussion of the procedural justifications for the rule reaffirmed in *Odolecki* is the view that "\* \* \* a liability insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured \* \* \*," 55 *N. J.* at 549. Accordingly, the language of any automobile liability insurance omnibus clause must be read in light of the settled legislative policy designed to provide financial compensation to those who are wrongfully injured in motor vehicle accidents. *Matits v. Nationwide Mutual Ins. Co., supra,* 33 *N. J.* at 496. See *Small v. Schuncke, supra,* 42 *N. J.* at 412; *Odolecki v. Hartford Accident & Indemnity Co., supra,* 55 *N. J.* at 549.

Although the question of Nick's coverage under the New Jersey Manufacturers policy is ultimately controlled by

*N. J. S. A.* 39:6–46, we must first consider whether the language of the policy omnibus clause comports with the statutory requirements. The legislative provision directs that an automobile liability policy shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the *express or implied consent* of the insured * * *." (Emphasis supplied). The New Jersey Manufacturers policy provision obligates the insurance company to provide coverage for "* * * injury sustained to any person arising out of the maintenance, ownership or use of the owned automobile" and to "any person using such automobile with the permission of the named insured; provided his actual operation or (if he is not operating) his other actual use is within the scope of such permission * * *."

The policy language differs in two respects from the statutory provision. First, the policy substitutes the phrase, "with the permission of the named insured," for the statutory language, "with the express or implied consent of the insured." This difference appears to be merely one of semantics. The word "permission" appears to us to be simply a shortcut or more informal method of expressing the idea contained in the statutory phrase, "with the express or implied consent." Although the word "permission" in general conveys the thought embodied in the statutory language, we follow the specific statutory language because it represents the precise legislative choice.

Second, unlike the statute, the policy limits coverage of the insured's permittees to a permittee whose "* * * actual operation [of the issured's vehicle] or (if he is not operating) his other actual use [of the vehicle] is within the scope of [the insured's] permission." The statute does not distinguish the use of a vehicle by its operation from other types of uses, as does the policy. Nor does it impose a requirement that the permittee's use be within the "scope" of the insured's "permission."

The Court, in *Indemnity Insurance Company of North America v. Metropolitan Casualty Insurance Company of New York*, 33 N. J. 507, 513–14 (1960), discussed the distinction between the terms "operation" and "use" as employed in omnibus clauses such as that involved here. The Court said:

* * * The clause says nothing about *operation* of the vehicle. It is the *use* which must be permitted. * * * We think that in this context the words *use* and *operation* are not synonymous. The *use* of an automobile denotes employment for some purpose of the user; the word "*operation*" denotes the manipulation of the car's controls in order to propel it as a vehicle. *Use* is thus broader than *operation*. One who operates a car uses it * * *, but one can use a car without operating it. An automobile is being used, for example, by one riding in it although another is driving.

Since in this context the words *operation* and *use* have different meanings and the omnibus clause requires only that the *use* of the automobile be with the permission of the named insured, any prohibition as to the *operation* of the automobile is immaterial to a determination of coverage. Thus, even though a driver has been expressly prohibited from *operating* the car, he is covered if the car was being *used* for a purpose permitted by the named insured. * * * [citations omitted]

When viewed in light of this discussion, it is clear that the language of the omnibus clause in the New Jersey Manufacturers policy significantly departs from that contained in the statute by limiting the statutorily mandated coverage for persons who used the insured's vehicle in several respects.

The issue is therefore not what this omnibus clause provides, but what the Legislature has directed.[1] The Appellate

---

[1]In *Selected Risks Ins. Co. v. Zullo*, 48 N. J. 362 (1966), the Court considered the relationship between the statutory language contained in the Motor Vehicle Security-Responsibility Law, N. J. S. A. 39:6–46(a), quoted above, and the scope of the coverage provided in the standard omnibus clause. The Court there said:

* * * A policy so offered [for "proof of financial responsibility under N. J. S. A. 39:6–46 and 48] must have the broad form coverage set forth in N. J. S. A. 39:6–46(a). A policy which purports to have more restrictive omnibus coverage is automatically amended to conform to the statutory standard. N. J. S. A. 39:6–48(b). * * * [48 N. J. at 373]

Division erroneously concluded that the New Jersey Manufacturers policy provision, precluding coverage when the vehicle was driven without the owner's permission, did not illegally depart from the statutorily required omnibus clause. Since we hold that the New Jersey Manufacturers policy provision did impermissibly depart from the statute, it is ineffective and the statutory language controls. See *Selected Risks Ins. Co. v. Zullo*, 48 *N. J.* 362 (1966).

■ Under the Court's construction of the statute, the scope of the term "use" is broad and includes use by a passenger as well as by the operator. In a number of cases our courts have considered a remarkably wide variety of uses by passengers and other non-operating users, and whether the omnibus clause coverage must be afforded to such persons. In *Westchester Fire Ins. Co. v. Continental Ins. Cos.*, 126 *N. J. Super.* 29 (App. Div. 1973), aff'd o. b. 65 *N. J.* 152 (1974), a passenger threw a stick from a moving automobile and struck a passing bicyclist. The Court held that the accident arose out of the use of the automobile, and further that the negligent passenger, as a permitted user, came under the insured's liability coverage.

In *Gronquist v. Transit Casualty Co.*, 105 *N. J. Super.* 363 (Law Div. 1969), a passenger in a car was held to be covered by the insured's liability policy even though the passenger had caused the accident by leaning forward from the rear seat over the back of the front seat, interfering with the driver's operation of the car. In *Unsatisfied Claim and Judgment Fund Board v. Clifton*, 117 *N. J. Super.* 5 (App. Div. 1971), a gas station employee engaged in fixing the insured's car injured a friend of his who had been helping him guide the car to a hydraulic lift. The court held that the employee's use was a permitted one covered by the insured's policy.

In *Liberty Mutual Ins. Co. v. O'Rourke*, 122 *N. J. Super.* 68 (Ch. Div. 1973), a car had stalled and two men were assisting the driver in remedying the problem. One leaned under the hood and poured gasoline from a can into the

throat of the carburetor, causing an explosion which ignited the can. He reared back and flung the gasoline can away from him and into the face of one of the driver's children. The repair activity was held to be a permitted use within the meaning of the omnibus clause in the driver's policy. Finally, in *Selected Risks Ins. Co. v. Nationwide Mutual Ins.,* 133 *N. J. Super.* 205 (App. Div. 1975), a garage owner was examining the insured's vehicle when it suddenly lurched forward, killing the garage owner and injuring the insured's wife. The court held that the estate of the deceased was covered by the insured's policy for the deceased's death because the examination of the auto was a permitted use under the insured's policy.

■■ The issue thus becomes whether Nick's unusual behavior in taking over and driving the Leonard vehicle vitiated Mrs. Leonard's initial consent to Nick's use of her auto as a passenger, and therefore precluded coverage of the consequences of Nick's acts under her policy with New Jersey Manufacturers. In our view, the rationale developed in the "initial permission" cases fully applies to the present situation. Paraphrasing the language in *Indemnity Ins. Co. of North America v. Metropolitan Casualty Ins. of New York, supra,* the statute requires only that the initial use of the automobile be with the consent of the named insured. As the Court stated in *Small v. Schuncke, supra,* "[w]hether permission to use is granted for a purpose which will benefit the owner, the permittee, or both is immaterial under the initial permission rule, which is not concerned with the scope of use for which permission is granted." 42 *N. J.* at 413–14. Thus, as long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use, such as from a passenger to a driver, do not require the additional specific consent of the insured. Only where the deviation from the use consented to amounts to "theft or the like" will coverage be precluded under the insured's policy. *Matits*

v. *Nationwide Mutual Ins. Co., supra,* 33 *N. J.* at 496; *Small v. Schuncke, supra,* 42 *N. J.* at 413.

It is clear that Nick's initial use of the Leonard vehicle as a passenger was with the express consent of Mrs. Leonard, the named insured. The Appellate Division reasoned, however, that Nick's "ouster" of Mrs. Leonard from the car constituted an "unauthorized seizure and operation" of the vehicle, and that therefore her initial consent to his use became nugatory. *Motor Club Fire & Cas. Co. v. N. J. Mfrs. Ins. Co., supra,* 135 *N. J. Super.* at 371. Although the Appellate Division erroneously cast its conclusion in terms of Nick's lack of expressed or implied permission to operate the Leonard car, it might be argued that Nick's conduct constituted "theft or the like" under *Matits* and *Small,* and for that reason his acts were not covered by Mrs. Leonard's policy.

■ The strong legislative policy which would assure financial protection to innocent victims of automobile accidents, embodied in the mandated omnibus clause and long and consistently invoked by our courts in the "initial permission" cases, applies with no less force to the present situation. The *Matits* and *Small* exclusion from coverage for those situations in which "theft or the like" has occurred must be construed narrowly in light of this expressed policy. We think that the "theft" component of the exception connotes nothing less than the willful taking of another's car with the intent permanently to deprive the owner of its possession and use. See *State v. Leicht,* 124 *N. J. Super.* 127, 131 (App. Div. 1973); *Stewart v. Home Fire & Marine Ins. Co.,* 2 *N. J. Misc.* 515, 517 (Sup. Ct. 1924); 50 *Am. Jur.* 2d, *Larceny,* § 2, p. 149. While we need not exhaustively explore the scope of the "or the like" component of the exception, we think that the author of *Matits* and *Small* contemplated conduct much more like traditional theft than the conduct here involved.

Nothing in the record before us remotely suggests that Nick intended to steal Mrs. Leonard's car. Mrs. Leonard testified that she did not view Nick's acts as a "theft" of her

car, and that she fully expected to see both Nick and the car again. Although Mrs. Leonard indicated that Nick's conduct startled and frightened her, she stated that Nick did not touch her or threaten her with physical injury or contact in any way. Hence, admittedly abberational conduct of the user of a vehicle, such as that here, does not constitute "theft or the like" as that term is used in *Matits* and *Small*.

Moreover, the record indicates that both the appointment to visit the psychiatrist, and the trial run to the psychiatrist's office were Mrs. Leonard's ideas, and that Nick was initially reluctant to endorse either plan. Given Nick's emotional problems, it is likely that Mrs. Leonard would reasonably have expected her policy to cover her friend Nick when, according to his testimony, he began driving the car because he wanted to return home. See *State Farm v. Zurich American Ins. Co.*, 62 *N. J.* 155, 179 (1973) (Weintraub, C. J., concurring); *Westchester Fire Ins. Co. v. Continental Ins. Cos.*, *supra*, 126 *N. J. Super.* at 36.

Nick's activities cannot be held to vitiate Mrs. Leonard's consent to his use of the automobile or to deprive him of the protection afforded by the omnibus clause of Mrs. Leonard's insurance policy. We hold that Mrs. Leonard's New Jersey Manufacturers policy covered Nick after he seized control of Mrs. Leonard's car, and that therefore New Jersey Manufacturers was primarily liable for the injuries to Mrs. Scibetta.

Reversed.

CLIFFORD, J. (dissenting). The Court here reaches what surely must be the outer limits of the "hell or high water" doctrine, so denominated by Justice Hall and otherwise referred to as the "initial permission" rule. *Small v. Schuncke*, 42 *N. J.* 407, 416 (1964) (Hall, J., concurring). Sharing his hankering for higher places and drier ground, I think that had I been a member of the Court during the time the "initial permission" doctrine was being formulated and developed in New Jersey, I would have shunned, as did Justice

Hall, the straining of common language and suspension of reasoned analysis that have led to the zany result which application of that doctrine, now in its full-blown maturity, is said to dictate in this case. *See Baesler v. Globe Indemnity Co.*, 33 *N. J.* 148 (1960); *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488, 498 (1960) (Hall, J., dissenting); *Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N. Y.*, 33 *N. J.* 507, 516 (1960) (Hall, J., dissenting); *Small v. Schuncke, supra*, 42 *N. J.* at 416 (Hall, J., concurring); *Selected Risks Ins. Co. v. Zullo*, 48 *N. J.* 362 (1966); *Odolecki v. Hartford Acc. & Indem. Co.*, 55 *N. J.* 542 (1970); *State Farm v. Zurich Am. Ins. Co.*, 62 *N. J.* 155 (1973).

However, I confess to a certain reluctance to embark on the not demonstrably profitable chore of attempting to reshape the "initial permission" rule. While I might warm to the task of rescuing both the policy and the statutory language, *N. J. S. A.* 39:6-46, from the rigamarole to which they have been reduced by the line of cases referred to above, I detect no present inclination on the part of a necessary three additional members of the Court to lend support to that endeavor. There appears to be little sentiment favoring re-exploration of territory long since bereft of its virginity. Therefore, as a matter of judicial discipline and for purposes of this case, I am willing to accept as controlling, without conceding its validity, the principle announced by the majority that

\* \* \* as long as the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use, such as from a passenger to a driver, do not require the additional specific consent of the insured. Only where the deviation from the use consented to amounts to "theft or the like" will coverage be precluded under the insured's policy.
[*Ante* at 437.]

But quite apart from whatever disagreement I might have with this principle, it is on the element of "theft or the like" that I think this case stumbles. While we may have long since swallowed the camel of "implied con-

sent to use" a vehicle, we continue to strain at the gnat of "theft or the like." That handy expression — perfectly understandable, I would suppose, to a layman but apparently less so to the refined legal mind — early on found its way into the articulation of the "initial permission" rule, *Matits v. Nationwide Mut. Ins. Co., supra,* 33 *N. J.* at 497, and was perpetuated in *Small v. Schuncke, supra,* 42 *N. J.* at 413. *Odolecki, supra,* simplified the inquiry even more by translating "theft or the like" into "an unlawful taking." 33 *N. J.* at 547. And so in this case if Nicholas Scibetta's control of Mrs. Leonard's automobile, which he was driving when the accident occurred, was achieved by "theft or the like" or if his taking over the car was "unlawful," then, as everyone readily acknowledges, coverage is not available through Mrs. Leonard's insurer, the defendant New Jersey Manufacturers Insurance Company (NJM), and the injured passenger's recovery is limited to the $50,000 provided by plaintiff, Motor Club Fire & Casualty Company (Motor Club), Nicholas Scibetta's carrier.

The majority opinion adequately states the facts pertinent to the present inquiry, *ante* at 429. Let them be restated here:

* * * Mrs. Leonard stopped at an angled intersection on Bloomfield Avenue and waited for a pause in the traffic. Suddenly Nick began climbing across the front, over his mother. He grabbed the steering wheel, telling Mrs. Leonard to get out of the car. Mrs. Leonard, stunned and frightened by Nick's actions and expression, pressed down the emergency brake and exited from the driver's side onto a traffic island in the street. Mrs. Leonard testified at trial: "I knew I had to get out * * * [b]ecause he was practically in the seat there and I knew he had the wheel." Mrs. Scibetta unsuccessfully pleaded with her son to desist. Nick succeeded in crawling across the front seat, took the wheel, and drove onto Bloomfield Avenue. Almost immediately, the automobile struck the rear of another car, went out of control, and crashed into an office building.

While the Appellate Division did not specifically characterize Nicholas' conduct as amounting to "theft or the

like" or as being otherwise "unlawful," it did point out that his operation followed a "coerced ouster of the owner from the automobile" and hence was an "unauthorized seizure and operation." *Motor Club Fire & Cas. Co. v. N. J. Mfrs. Ins. Co.,* 135 *N. J. Super.* 362, 371 (App. Div. 1975). Despite this unassailed and unassailable conclusion by the court below, the majority refuses to fit the round peg of the facts into the round hole of an "unlawful taking" because, it says, the "theft" component of the exclusion from coverage connotes "nothing less than the wilfull taking of another's car with the intent permanently to deprive the owner of its possession and use * * *"; and the "or the like" component of the exception contemplates "conduct much more like traditional theft than the conduct here involved." *Ante* at 438. The round peg is, *mirabile dictu,* rendered square in the absence of proof of "something like" traditional theft — this, despite the fact that, as the majority puts it, Nicholas "seized control of Mrs. Leonard's car" (*ante* at 439) by bodily forcing her out of it, frightening her and scaring his own mother "stiff" in the process before driving off, leaving the owner stranded in the highway.

It may reasonably be assumed that in the present context the expression "theft or the like" was intended to set the final boundary beyond which "consent to use" a vehicle will not be stretched. The phrase "or the like" attached to "theft" is not likely to have been casually or thoughtlessly dropped into our decisional law in the first instance and mindlessly repeated in other cases thereafter. A meaning must have been ascribed to it. And if "or the like" means anything, it must mean something short of theft in the technical sense. Counsel for Motor Club conceded as much at the first oral argument before us. I would suppose (it being left by the majority entirely to supposition) that the only element of traditional theft lacking in Nicholas' conduct in the case before us is the intention *permanenlly,* rather than temporarily, to deprive the owner of her ve-

hicle. And so, it seems to me, his conduct is "like" — albeit less than — traditional theft.

Furthermore, if we are to accept *Odolecki's* dilution of "theft or the like" to "an unlawful taking," 55 *N. J.* at 547, then manifestly the facts of this case satisfy the requirement of unlawful conduct. For what else is an unauthorized seizure of a motor vehicle, accomplished by an assault on and coerced ouster of the owner, if not plainly unlawful? Such action, the antithesis of permissive or consensual use, amounts to a violation of *N. J. S. A.* 2A:170-38 (Supp. 1976-77), making the unlawful taking or using of a means of conveyance a disorderly persons offense; and it seems clear that to demonstrate a violation thereof, there need not be shown any intention permanently to deprive the vehicle's owner of its use.

Finally, the majority suggests "it is likely that Mrs. Leonard would reasonably have expected her policy to cover her friend Nick when, according to his testimony, he began driving the car because he wanted to return home." *Ante* at 439. Quite apart from the entirely speculative nature of that gratuitous observation, unsupported by a single word in the record, its reliability as a basis for determining consent to use the vehicle in question suffers from the glaring defect of its hindsight character. See *Matits v. Nationwide Mut. Ins. Co., supra,* 33 *N. J.* at 499 (Hall, J., dissenting).

Giving the expressions "theft or the like" and "unlawful taking" their plain and generally accepted meanings, I conclude that Nicholas Scibetta's use of Mrs. Leonard's vehicle at the time of this accident was without her consent. Therefore, there was no coverage under NJM's policy and no obligation to defend.

I would affirm the judgment of the Appellate Division.

Justice MOUNTAIN joins in this dissenting opinion.

*For reversal*—Justices SULLIVAN, PASHMAN and SCHREIBER and Judges CONFORD and CARTON—5.

*For affirmance*—Justices MOUNTAIN and CLIFFORD—2.