812 A.2d 385

JACQUELINE JAQUEZ, PLAINTIFF, v. NATIONAL CONTINEN-
TAL INSURANCE COMPANY, DEFENDANT–APPEL-
LANT/THIRD–PARTY PLAINTIFF, AND EDGAR LOPERENA,
CARLOS RIBOT, ERICA ROCHESTER, AND C AND S AUTO
SALES, DEFENDANTS, v. STATE FARM INDEMNITY COMPA-
NY, THIRD–PARTY DEFENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 2002—Decided December 30, 2002.

Before Judges STERN,[1] COBURN and ALLEY.

*Thomas J. Decker,* argued the cause for appellant (*Decker & Magaw,* attorneys; *Mr. Decker,* on the brief).

*Peter DeSalvo, Jr.,* argued the cause for respondent (*Soriano, Henkel, Salerno, Biehl & Mathews,* attorneys; *Mr. DeSalvo,* on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

This case concerns coverage under the omnibus clause of an automobile liability insurance policy issued by defendant State Farm Insurance Company ("State Farm") to defendant Erica Rochester. Plaintiff, Jacqueline Jaquez, a passenger in a car insured by defendant National Continental Insurance Company ("National"), was injured when that car was struck by Rochester's car. Defendant Carlos Ribot was driving the Rochester car. State Farm denied coverage on the ground that Ribot did not have permission to operate Rochester's car despite his receipt of its key from Rochester for the purpose of entering it and retrieving a pack of cigarettes. National settled plaintiff's uninsured motorists claim and sought indemnification from State Farm.[2] On cross-

---

[1] Judge Stern was added to this case after argument with the parties' consent.

[2] National also settled with the driver of the car, Edgar Loperena, who filed a separate complaint, which, we are advised, was consolidated with Jaquez's

motions for summary judgment, the trial court ruled in favor of State Farm, finding that coverage was not provided under the initial permission rule because Ribot had not been given permission to drive the Rochester car. We reverse.

On March 17, 1999, Rochester drove with her boyfriend, Carlos Alvarez, to the house of his sister, Mildred, in Newark. She parked and locked her car on the street in front of Mildred's house. On entering the house, they found Mildred and Carlos Ribot, who was Mildred's son and Carlos's nephew. Rochester had known Ribot for about two years. After a while, Ribot asked Rochester for a cigarette. She said they were in her car, and she handed him the key, telling him he could get them. A few minutes after Ribot left, Mildred screamed, "Erica where is your car?" Rochester ran outside, saw that the car was missing, and immediately called 911 to report what she believed was a theft. Shortly thereafter, Rochester saw her car coming down the street on a flatbed tow truck. Ribot had driven Rochester's car a short distance and had been involved in the two-car accident which injured Jacqueline Jaquez. Ribot, who it is agreed was solely responsible for the accident, did not submit any sworn testimony. Thus, his purpose in driving Rochester's car may only be inferred from the circumstances. According to Rochester, Ribot was arrested on the date of the accident for theft of her car. However, there is no indication in the record that criminal charges were leveled against him, and if so, their outcome.

■ In *Matits v. Nationwide Mutual Ins. Co.*, 33 *N.J.* 488, 166 *A.*2d 345 (1960), the Court held "that if a person is given permission to *use* a motor vehicle in the first instance, any subsequent use *short of theft or the like* while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automo-

---

action. National seeks indemnification from State Farm with respect to Loperena as well. Each plaintiff received $17,500 from National.

bile liability insurance policy." *Id.* at 496–497, 166 *A.*2d 345 (emphasis added).

In *Motor Club Fire & Cas. Co. v. N.J. Manu. Ins. Co.,* 73 *N.J.* 425, 375 *A.*2d 639, *cert. denied,* 434 *U.S.* 923, 98 *S.Ct.* 402, 54 *L.Ed.*2d 281 (1977), the question of coverage under the initial permission rule occurred in these circumstances. The car's owner agreed to transport an emotionally disturbed man and his mother, her next door neighbors, to a psychiatrist. *Id.* at 428, 375 *A.*2d 639. During the trip, the man, who had expressed reluctance to see the psychiatrist, suddenly climbed into the front seat, ordered the owner out, and drove away, almost immediately getting into an accident with another car. *Id.* at 429, 375 *A.*2d 639. He said that he took control of the car because he wanted to drive home. *Id.* at 439, 375 *A.*2d 639. The Court defined the ultimate issue as being whether the man's "unusual behavior in taking over and driving the [owner's] vehicle vitiated [the owner's] initial consent to Nick's use of her auto as a passenger ...." *Id.* at 437, 375 *A.*2d 639. The Court went on to observe that once "the initial use of the vehicle is with the consent, express or implied, of the insured, any subsequent changes in the character or scope of the use, such as from a passenger to a driver, do not require the additional specific consent of the insured." *Ibid.* It then turned to the exception for deviations from the use consented to which amount to "theft or the like." The Court held that "[t]he strong legislative policy which would assure financial protection to innocent victims of automobile accidents" dictates that the phrase " 'theft or the like' must be construed narrowly ...." *Id.* at 438, 375 *A.*2d 639. Therefore, the Court determined "that the 'theft' component of the exception connotes nothing less than the willful taking of another's car with the intent permanently to deprive the owner of its possession and use." *Ibid.* (citations omitted). With respect to the "or like" component, we note that at the time the case was decided the man's conduct clearly violated *N.J.S.A.* 2A:170–38, which provided that "[a]ny person who unlawfully takes or uses any means of conveyance ... is a disorderly person." Nonetheless, without alluding to that statute, the Court said, "While we need not

exhaustively explore the scope of the 'or the like' component of the exception, we think that the author of *Matits* ... contemplated conduct much more like traditional theft than the conduct here involved." 73 *N.J.* at 438, 375 *A.*2d 639.

In *Verriest v. INA Underwriters Ins. Co.*, 142 *N.J.* 401, 662 *A.*2d 967 (1995), the Court applied the initial permission rule so as to afford coverage to a man who was given permission to perform repairs on the owner's car, which he was about to purchase, and its key, and was thereafter involved in an accident while driving the car on the public roads. The two dissenting justices summarized their opposition in this way:

> In all [of the prior cases cited by the majority], both the initial use and the subsequent use involved the operation of the car. The deviation in the subsequent use involved a change in the route, the time of operation, or in the identify of the driver or passengers. In no case cited by the majority has a court converted permission for a strictly non-operational purpose into permission for a subsequent use involving operation of the vehicle.
>
> [*Id.* at 419, 662 *A.*2d 967.]

Nonetheless, the majority opinion clearly endorsed the concept that once permission to use the vehicle is given only theft or the like will preclude coverage:

> Under the initial permission rule only two questions must be answered to determine coverage. Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute "theft or the like?"
>
> [*Id.* at 412, 662 *A.*2d 967 (quoting *Small v. Schuncke*, 42 *N.J.* 407, 413, 201 *A.*2d 56 (1964)).]

And the majority emphasized that " 'the scope of the term "use" is broad,' covering a wide variety of activity other than operating a vehicle on a public roadway." *Ibid.* (citation omitted). With respect to the exception for "theft or the like," the Court noted that since the driver was simply test-driving the car, his deviations "from the initial permission ... were not so inconsistent with the understanding of the parties to rise to the level of 'theft or the like.' " *Id.* at 415, 662 *A.*2d 967.

■ Applying the cited principles to the circumstances of this case, we recognize that Rochester definitely gave Ribot permission to use her car, though obviously only for the purpose of opening

its door, retrieving a pack of cigarettes from inside, and re-locking the door. National concedes, of course, that Rochester did not give Ribot permission to drive the car. However, it argues that the denial of coverage was improper because there was insufficient evidence of "theft or the like."

Given the relationships among the individuals, and the circumstances leading to the accident, in particular Ribot's knowledge that he had just received the car's key from Rochester, we agree that the evidence is insufficient to support the conclusion that Ribot intended to permanently deprive Rochester of her car. But the question then becomes whether what occurred is "like" theft.

Theft of an automobile, a third-degree crime under *N.J.S.A.* 2C:20–2(b), requires proof of a purpose "to deprive" the owner of his or her property. *N.J.S.A.* 2C:20–3. Closely related to theft of an automobile is the offense of "Unlawful Taking of Means of Conveyance." *N.J.S.A.* 2C:20–10, which replaced *N.J.S.A.* 2A:170–38. With respect to automobiles, that statute provides: "A person commits a crime of the fourth degree if, with purpose to withhold temporarily from the owner, he takes, operates or exercises control over a motor vehicle without the consent of the owner or other person authorized to give consent." *N.J.S.A.* 2C:20–10(b). While we refer to these criminal statutes, we do not mean to suggest that "theft or the like" as used in the initial permission doctrine is defined thereby. As the Court noted in *Motor Club Fire & Cas. Co., supra,* that phrase in the context of insurance coverage is to be "construed narrowly." 73 *N.J.* at 438, 375 *A.*2d 639. Nonetheless, the statutes provide a useful reference point for discussion.

Unquestionably, Ribot operated Rochester's car without her permission. But where is the evidence that he intended to even temporarily withhold the car from her? He knew that she was expecting him to return with her cigarettes. Thus, it would have been natural for him to assume that if he returned reasonably quickly, she would not come outside wanting to use or operate the car. Moreover, this case involves conduct that is less like theft or

unlawful taking of a means of conveyance than the conduct considered in *Motor Club Fire & Cas. Co., supra*, where the driver forced the owner, his neighbor, out of the car so that he could drive home. The Court found coverage there even though the driver temporarily withheld the car from its owner because he had no intent to take it. While Ribot's operation of the car for his own pleasure was inconsistent with the permission granted, as the Court observed in *Verriest, supra*, we do not believe the inconsistency "rise[s] to the level of 'theft or the like.'" 142 *N.J.* at 415, 662 *A.2d* 967. Finally, a construction against coverage in these circumstances would be inconsistent with the "strong legislative policy which would assure financial protection to innocent victims of automobile accidents ...." *Motor Club Fire & Cas. Co.*, 73 *N.J.* at 438, 375 *A.2d* 639. Therefore, we hold that the State Farm policy provides coverage in this case.

Reversed and remanded for such further proceedings as may be necessary consistent with this opinion.