232 N.J. Super. 582 (1989)
557 A.2d 1052
ST. PAUL INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
RUTGERS CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1989.
Decided May 15, 1989.
*583 Before Judges PRESSLER, SCALERA and STERN.
Stacey R. Sack argued the cause for appellant (Bruce M. Resnick, attorney, Stacey R. Sack, on the brief).
James V. Loewen argued the cause for respondent (Montano, Summers, Mullen, Manuel and Owens, attorneys, James V. Loewen, on the brief).
The opinion of the Court was delivered by SCALERA, J.A.D.
This case involves a dispute between two insurance companies over the liability insurance coverage for an automobile accident.
While we question whether the facts were properly established below (for reasons stated later), for our purposes we will assume them to be as follows: Darren Mingo (Mingo) was 17 years old and lived with his mother Diane Miller (Miller) in Atlantic City. He had a New Jersey driver's permit but as yet, was still an unlicensed driver. On the date of the accident he took his mother's 1981 Pontiac for a drive, allegedly without her permission, after he had been told by her only to wash the car. According to the uncertified statements offered on the summary judgment motion the car was owned by and registered in the name of Anthony Artis (Artis) who was stationed in West Germany in the U.S. Army. Artis had given the car to Miller who had it insured in her own name by a policy issued by Rutgers Casualty Insurance Company (RCIC).
*584 On September 12, 1983 Margaret Miller (Margaret) (unrelated to Diane Miller) was driving a car owned by her employer and insured by St. Paul Insurance Company (St. Paul). According to a copy of the police report, Margaret was stopping for a stop sign when Mingo made a wide right turn from an intersecting street and struck her car. Mingo then fled the scene but eventually was issued a traffic summons for driving without a valid license and leaving the scene of an accident, to which he plead guilty.
RCIC denied liability coverage for the accident because Mingo assertedly did not have his mother's permission to drive the car at the time of the accident. Margaret then pursued a claim for personal injury under the uninsured motorist provision of the St. Paul policy which was later settled for $12,000. St. Paul was subrogated to her rights against Mingo and Miller and then instituted this declaratory judgment suit against RCIC to hold it responsible for coverage to Mingo under its policy.
St. Paul brought a summary judgment motion, attaching copies of the RCIC policy, the police report and uncertified statements from Mingo and his mother relating to the circumstances surrounding his possession of the car at the time of the accident. St. Paul argued that since Mingo was concededly a "family member" of the named insured, Miller, RCIC was compelled to afford coverage regardless of whether he was driving with his mother's permission. RCIC did not file any cross motion for summary judgment nor did it raise any other defense at that time except to assert that Mingo did not have permission to operate the vehicle. The trial judge agreed with St. Paul and held that since Mingo was an additional insured under the terms of the RCIC policy, Miller's lack of permission was irrelevant.
On this appeal RCIC argues that the trial court improperly granted summary judgment to St. Paul and also attempts to raise St. Paul's lack of standing to bring this suit directly against it.
*585 The relevant provisions of the RCIC policy issued to Miller provide:
INSURANCE AGREEMENT
A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.
* * * * * * * *
B. "Insured" as used in this part, means:
1. You or any "family member"[1] for the ownership, maintenance or use of any auto or "trailer."
2. Any person using "your covered auto,"
* * * * * * * *
EXCLUSIONS
A. We do not provide liability coverage for any person:

* * * * * * * *
6. While employed or otherwise engaged in the "business" of:
a. selling;
b. repairing;
c. servicing;
d. storing; or
e. parking;
vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
a. you;
b. any "family member," or
c. any partner, agent or employee of you or any "family member."
* * * * * * * *
8. Using a vehicle without a reasonable belief that that person is entitled to do so. [emphasis supplied].
In granting St. Paul's motion for summary judgment the trial court interpreted the policy to include Mingo in its coverage solely because he was a family member "insured" under the terms of the policy:

*586 [T]he language of the policy is quite clear and it says that family members are insureds and it defines family members and does not put any conditions upon those family members as being with permission or a licensed driver.
If the company wishes to put those restrictions on its policy, the Commissioner of Insurance would permit it, they've got to put those restrictions on and the courts will not read them in there.
In our opinion, the trial court erred in so interpreting the RCIC policy. Although the policy does include family members of the named insured as additional insureds, the exclusionary provision of paragraph 8 applies to "any person" using a car without permission. Of all the exclusions enumerated only paragraph 6 explicitly states that it does not apply to the named insured or any family member. Therefore, Mingo was not afforded coverage under the policy terms if it is shown that he was using the car "without a reasonable belief that [he was] entitled to do so."
In holding this way we are aware that St. Paul is correct in pointing out that ambiguities in an insurance policy are to be construed broadly in favor of coverage for the insured. Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 292-295 (1977). See also Fellipello v. Allstate Ins. Co., 172 N.J. Super. 249, 257, 261 (App.Div. 1979).
However, the exclusion at issue here is plain and unambiguous and is not in contravention of any statute or regulation. Although N.J.S.A. 39:6A-1 et seq. does not expressly state that a liability insurer may exclude from coverage, non-permissive users, such an exclusion has not been held to be against public policy. In Allstate Ins. Co. v. Malec, 104 N.J. 1 (1986) the Supreme Court upheld a provision of an automobile insurance policy which excluded from coverage injuries resulting from intentional acts of the insured. There the Court noted that N.J.S.A. 39:6A-7 permitted exclusions from personal injury protection coverage. Malec, 104 N.J. at 9. That section now provides:
a. Insurers may exclude a person from benefits under section 4 and section 10 where such person's conduct contributed to his personal injuries or death occurred in any of the following ways:

*587 (1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or
(2) while acting with specific intent of causing injury or damage to himself or others.
b. An insurer may also exclude from section 4 and section 10 benefits any person having incurred injuries or death, who, at the time of the accident:
(1) was the owner or registrant of an automobile registered or principally garaged in this State that was being operated without personal injury protection coverage;
(2) was occupying or operating an automobile without the permission of the owner or other named insured. [N.J.S.A. 39:6A-7 (emphasis supplied and footnotes omitted)].
The Malec Court observed that there was no legislative intent barring exclusions from liability coverage. "There is no indication that the No-Fault Act was intended to effect any change in New Jersey's system of liability insurance as such, save as provided in N.J.S.A. 39:6A-3 in respect of coverage." 104 N.J. at 8 (emphasis in original).
Moreover, there are a number of cases involving the question of whether or not the driver had permission to use the car which would determine if coverage existed under an insurance policy. Nicholas v. Sugar Lo Co., 192 N.J. Super. 444 (App. Div. 1983) certif. den. 96 N.J. 284 (1984) involved an unlicensed 14-year-old boy who did not have permission to drive the car at the time he was in an accident. The car was owned and insured by the Sugar Lo Company, a company in which his parents were partners. Although his parents often allowed the boy to drive one of the company cars in the driveway of their home while his mother or his father was present to supervise he was specifically forbidden to drive on public roads.
In upholding the lower court's finding that the boy was not covered by the Sugar Lo policy because he did not have permission, we noted that the case turned on whether the permission previously granted in any way related to his use of the vehicle on the date of the accident. We cited Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960), an early permissive use case, wherein the Court held that a neighbor who borrowed the insured's car was covered by the policy *588 because her use did not go beyond the scope of the permission granted to her. In Nicholas, however, we found that it was quite clear from the facts that the young driver did not have permission to use the car and that his earlier uses of the car under their supervision were too remote to be considered related to use of the car on the date of the accident. 192 N.J. Super. at 452.
We do not regard as persuasive St. Paul's argument that the Nicholas case is distinguishable simply because the insurance policy was issued to a partnership and, therefore, could not extend coverage to "family members" of the named insured. We conclude that the trial judge erred in distinguishing Nicholas in this way when he determined that Mingo was covered under the policy.
Additionally, there are other cases lending support to the proposition that a child of the named insured may not be covered by an insurance policy when driving a car without permission. See generally State Farm Mutual Auto. Ins. Co. v. Zurich Am. Ins. Co., 62 N.J. 155 (1973), wherein the Supreme Court discusses extensively the issue of permissive use. Indeed, the provision in this case is similar to the provision at issue in Zurich. Both define as additional insureds, any family member of the named insured, but go on to exclude such person from coverage if they did not have a reasonable belief that they had permission to drive the car. The validity of such an exclusionary clause was upheld there.
Thus, the trial judge here improperly interpreted the terms of the RCIC policy when he found that Mingo was covered by his mother's policy. Consequently, he erroneously granted summary judgment in favor of St. Paul.
However, we are constrained to note that there remains unresolved in this case a pivotal issue of fact which should be determined in a plenary hearing. That is, whether Mingo had a "reasonable belief" that he had his mother's permission to use the car under the circumstances, notwithstanding the absence *589 of explicit permission. For example, if Miller, on occasion, had allowed Mingo to drive the car on public roads without supervision, it could be argued that on the date of the accident Mingo reasonably believed he had his mother's permission, in which case he would be covered by her RCIC policy. Cf. Nicholas v. Sugar Lo Co., supra.
Furthermore, we note that the "facts" forming the basis for consideration on the summary judgment motion were not established through affidavits or certifications in proper form, R.1:4-4, nor on the basis of facts "which are admissible as evidence to which the affiant is competent to testify." R.1:6-6. We assume that this shortcoming will be cured on remand.
Finally, the issue concerning St. Paul's standing, as a subrogee or otherwise, to bring this declaratory judgment action against RCIC, should be raised and settled on remand also.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] "Family member" is defined by the policy as "a person related to [the named insured] by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."