712 A.2d 709

RUTGERS CASUALTY INSURANCE COMPANY, PLAINTIFF,
v. JOSEPH E. COLLINS, DEFENDANT.

EDWARD G. IOVINO, AS ADMINISTRATOR AD PROSEQUENDUM
OF THE ESTATE OF RHONDA COLLINS, DECEASED, PLAIN-
TIFF–APPELLANT, v. RUTGERS CASUALTY INSURANCE CO.,
JOSEPH E. COLLINS, AND JAMES SPATARO, DEFENDANTS–
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1998[1]—Decided June 30, 1998.

Rodriguez, J., dissented and filed opinion.

---

[1] This appeal, originally scheduled October 16, 1997 was argued via telephone October 21, 1997 and reargued February 4, 1998.

Before Judges D'ANNUNZIO, A.A. RODRIGUEZ and COBURN.

*James M. Nardelli* argued the cause for appellant Edward G. Iovino (*Parsons, Cappiello ·& Nardelli,* attorneys; *Mr. Nardelli,* on the brief).

*Mitchell S. Rosenzweig* argued the cause for respondent Rutgers Casualty Insurance Co. (*Bruce M. Resnick*, attorney; *Mr. Rosenzweig*, on the brief).

*Judith Moore* argued the cause for respondent Joseph Collins (*King, Kitrick, Jackson & Troncone*, attorneys); (*James Kane Record*, on the brief).

*Edward H. Lee* argued the cause for respondent James Spataro (*Pitman, Pitman & Mindas*, attorneys; *Stephanie O. Joy*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

On April 5, 1993, Joseph Collins was operating a Toyota titled in the name of his stepfather, James Spataro. The car, however, was considered to be Doris Spataro's personal vehicle. Doris is Joseph's mother and James Spataro's wife. At that time, Joseph's wife, Rhonda, was a passenger in the Toyota. Joseph was drunk and was involved in an accident which killed Rhonda. Joseph was convicted of vehicular homicide and served a prison sentence.

The issue below was whether an automobile policy issued by Rutgers Casualty Insurance Co. (Rutgers) to James Spataro, insuring the Toyota and a Lincoln, also owned by James Spataro, provided liability coverage to Joseph. The policy, under Exclusion A.8, precluded coverage for "any person ... [u]sing a vehicle without a reasonable belief that that person is entitled to do so." The trial court ruled that coverage was not available because Joseph did not have a reasonable belief that he was entitled to use the Toyota. Edward G. Iovino, Rhonda's father and the executor of her estate, appeals from that determination. Joseph and Rhonda have a child, Joshua, who, presumably, would benefit from any damages recovered as a consequence of his mother's death.

These are the uncontroverted facts. Joseph and Rhonda had planned to attend a concert in New York on the night of April 4, 1993. They owned a Nissan automobile whose brakes were

malfunctioning. Joseph testified that he had to use the hand brake to stop the vehicle. Accordingly, Joseph and Rhonda determined that it would be dangerous to use the Nissan, and they decided to borrow the Toyota while Doris and James Spataro were out of town.

Joseph had a key to the Spataro house because he had been living there for the past two weeks. Joseph testified that he had separated from Rhonda to give him a better chance to deal with his alcoholism. Joseph and Rhonda entered the Spataro house, found the keys to the Toyota and took the vehicle; Rhonda drove the Toyota while Joseph drove their Nissan. They did not take the Toyota to New York, however. They used it to get to Rhonda's brother's house in North Brunswick, using other transportation to go from North Brunswick to New York. Later that evening, after returning to New Jersey, Joseph was driving the Toyota when it was involved in the accident.

In its letter opinion, the trial court stated that "[t]he principal issue to be determined herein is whether Joseph Collins and/or Rhonda Collins, his wife, had permission to drive the [Toyota] Camry of Doris and James Spataro, (Joseph Collins' mother and stepfather), on April 5, 1993."

Joseph, who was twenty-nine when the accident occurred, testified at trial that he did not have a valid driver's license at the time of the accident and had not had a valid driver's license since it had been revoked approximately ten years earlier. Rhonda did have a valid New Jersey driver's license. Joseph testified that neither he nor Rhonda was permitted to use either of his parents' cars, the Toyota or the Lincoln. Joseph denied that his mother had ever permitted Rhonda to use the Toyota. This testimony was inconsistent with his deposition testimony where he stated that Rhonda had driven the Toyota before April 1993. He also testified on deposition that Rhonda had driven James Spataro's Lincoln. During his deposition, Joseph testified that on occasion, Rhonda would be permitted to use the Toyota or the Lincoln "if we needed something from the store, if we were over at my parents' house,

my mother would say, here take my car. My father would say, here come take the car. You know, it was just to the store or so."

During the trial, Joseph explained that his deposition answers were the result of confusion and he was really talking about a Volkswagen Rabbit his mother had owned which Rhonda had been permitted to drive occasionally. In fact, Joseph testified that around 1990, his mother gave the VW Rabbit to Joseph and Rhonda for a nominal price; in essence, a gift.

In his trial testimony, Joseph did admit that at no time did his mother or James ever tell Rhonda that she could not drive their cars.

Doris Spataro testified that she and her husband acquired the Toyota in October 1990, and during the period they owned the Toyota, they had never given Joseph or Rhonda permission to drive it. Joseph had never driven the Toyota or the Lincoln. Doris testified that Rhonda had never driven the Toyota or the Lincoln and did not have permission to drive either of those vehicles. However, on cross examination, she conceded that she had never told Rhonda or Joseph that they could not use her vehicles because they had never asked her for permission. Doris Spataro further testified that her relationship with Rhonda, her daughter-in-law, was good. She stated that "she was like a daughter. I loved her dearly."

James Spataro testified that to his knowledge, Joseph had never operated the Toyota or the Lincoln and he never gave permission to Rhonda to operate either of those cars. He further testified that to the best of his knowledge, Rhonda had never operated either the Toyota or the Lincoln. He recalled that on one occasion either Rhonda or Joseph or both of them together asked to borrow his Lincoln to go to Trenton, but he did not permit it.

Based on this evidence, the trial court made the following findings:

Joseph knew he was prohibited from using either of the Spataro vehicles.

Under the test set forth in *St. Paul Ins. Co. v. Rutgers Casualty Ins. Co.*, 232 *N.J.Super.* 582 [557 A.2d 1052] (App.Div.1989) the question is whether the person

using the vehicle, (here Joseph) has a "reasonable belief that (he) was entitled to do so.["]

Based on the circumstances of this case I find that Joseph had no reasonable belief that he was entitled to use the vehicle either on his own or by giving the car to his wife who later "allowed" him to drive.

The record supports the trial court's determination that Joseph, whose license had been revoked, did not have a reasonable belief that he was entitled to use the Toyota. *Cf. State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 62 *N.J.* 155, 168, 299 *A.*2d 704 (1973) (hereinafter *Zurich* ) (stating that absence of a license to drive is not conclusive regarding implied permission, but it is an "influential" factor).

■ The major flaw in the court's determination, however, is the absence of any consideration regarding the reasonableness of Rhonda's belief that she was entitled to use the Toyota to travel from Holmdel to North Brunswick, in light of the unsafe brakes of the Nissan.

■ Rhonda's reasonable belief in her entitlement to use the Toyota is a critical issue because Joseph and Rhonda had to appreciate that the Spataros would not have made any of their vehicles available to Joseph because of his problematic driving history and the revocation of his driving privileges. The fact that Rhonda took the Toyota and drove it from the Spataro residence probably reflects Rhonda and Joseph's understanding of the Spataros' attitude regarding Joseph's use of their vehicles. The "reasonably believed" entitlement standard is much broader than the "permissive" standard. *Zurich, supra,* 62 *N.J.* at 169–70, 299 *A.*2d 704. The "reasonably believed" standard "focuses . . . on the state of mind of the claimed permittee. Did [she] in fact believe, with reason, that the owner was thus willing, whether or not the fact-finder would conclude from the circumstances that the owner was actually willing." *Id.* at 171, 299 *A.*2d 704. This determination must be made based on the "reaction of a reasonable [woman] of [Rhonda's] age, personality and social milieu, subject to such attendant influences on [her] judgment and mind as may be credibly discerned from the proofs." *Id.* at 172, 299 *A.*2d ·704.

Moreover, because the trial court focused on Joseph's reasonable belief, the court did not analyze the inconsistencies in the record regarding Rhonda's prior use of Spataro vehicles as bearing on Rhonda's reasonable belief. In this regard, we note Chief Justice Weintraub's warning in a similar context that "[a] named insured untutored in law and fearful that his consent might lead to his own liability for the damages in excess of the policy limits . . . may well be tempted to invent a claim that he prohibited others to drive or to convert a precatory request into a binding prohibition." *Baesler v. Globe Indem. Co.*, 33 *N.J.* 148, 159, 162 *A*.2d 854 (1960) (Weintraub, C.J., dissenting). The trial court should have been cognizant of Joseph's and Doris' testimony that neither Doris nor James had expressly prohibited Rhonda from driving their cars. The trial court must also consider a distinction between the Lincoln, which James prized, and the Toyota, which Doris used.

The case must be remanded for consideration of Rhonda's reasonable belief regarding use of the Toyota. If the court determines that Rhonda had a reasonable belief that she was entitled to use the Toyota, then the court must decide whether the initial permission rule would apply to Joseph's operation of the Toyota with Rhonda's permission. *See Odolecki v. Hartford Accident & Indem. Co.*, 55 *N.J.* 542, 549–50, 264 *A*.2d 38 (1970) (holding that once initial permission is given, person operating vehicle with consent of initial permittee is covered despite owner's instruction to initial permittee not to let anyone else use vehicle); *see also Martusus v. Tartamosa*, 150 *N.J.* 148, 158–59, 696 *A*.2d 1 (1997) (holding that initial permission rule applies to automobile coverage under excess liability umbrella policy).

█ The more interesting issue, not presented or considered below, is whether Exclusion A.8, precluding coverage for a vehicle used "without a reasonable belief that [the driver] is entitled to do so," applies to a family member of the named insured operating a covered automobile. A subsidiary issue is whether Joseph was a "family member."

The Rutgers insurance policy was introduced into evidence. James Spataro was the sole named insured, and the policy covered the Toyota and the Lincoln, both titled in James' name. The policy's "Definitions" section states that "[t]hroughout this policy 'you' and 'your' refer to: 1. · The 'named insured' shown in the Declarations; 2. The spouse if a resident of the same household."

The "Definitions" section does not define the word "insured." That definition is found in the insuring agreement for liability coverage. It states in relevant part:

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.

. . . .

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

Subsection F. of the "Definition" section provides: "Family member means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

The policy also contains exclusions. The relevant exclusion is:

*Exclusions*

A. We do not provide Liability Coverage for any person:

. . . .

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

There is evidence that Joseph may have been a "family member." If so, then the issue is whether Exclusion A.8 applies to family members while operating a covered automobile and who are provided coverage under the insuring agreement, B.1.

The principles governing the construction and application of insurance policies are well-established. We reviewed them in detail in *Sinopoli v. North River Ins. Co.*, 244 *N.J.Super.* 245, 581 *A.2d* 1368 (App.Div.1990), *certif. denied*, 127 *N.J.* 325, 604 *A.2d* 600 (1991), and we now summarize them. Liability policies should be construed liberally in favor of the insured and strictly against the insurer. They should be construed to provide full coverage of

the risk rather than to narrow protection. The rule of liberal construction, however, cannot be used to authorize a perversion of the policy's language, and the court cannot rewrite the contract. If unambiguous, limitations are to be construed and enforced as expressed. But in the event of ambiguity a court must resolve ambiguity in favor of coverage. The reasonable expectations of an insured should be fulfilled so far as the policy's language permits. Finally, the burden is on the insurer to bring a case within an exclusion. *Id.* at 250–51, 581 *A.*2d 1368 (citations omitted).

Another panel of this court has determined that the exclusion applies to family members operating a covered automobile without permission. *St. Paul Ins. Co. v. Rutgers Casualty Ins.*, 232 *N.J.Super.* 582, 557 *A.*2d 1052 (App.Div.1989). In that case, the insured's teenage son took the insured family vehicle without permission and was involved in an accident. The *St. Paul* panel held that the exclusion applicable to "any person" was "plain and unambiguous" and precluded coverage for the insured's family member. *Id.* at 586, 557 *A.*2d 1052.[2]

We disagree with *St. Paul.* We conclude that the context and the reasonable expectations of an insured combine to render Exclusion A.8 ambiguous.

A seemingly unambiguous clause may, nevertheless, generate a "sense of ambiguity" "because of a feeling of unease about the policyholder's reasonable expectations." *Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 268, 398 *A.*2d 1274 (1979). Our Supreme Court defined the relevance of an insured's reasonable expectations in *Kievit v. Loyal Protective Life Ins. Co.*, 34 *N.J.* 475, 170 *A.*2d 22 (1961). There, Justice Jacobs explained:

---

[2] Recently, in *Ryan v. LCS, Inc.*, 311 *N.J.Super.* 618, 710 *A.*2d 1050 (App.Div. 1998), a panel of this court applied the exclusion to preclude coverage where the insured's family member stole a third party's automobile and drove it into another vehicle, killing two persons. The *Ryan* panel cited *St. Paul* favorably and agreed that the phrase " 'any person' means any person, whether he/she is an insured or not." *Ryan, supra*, 311 *N.J.Super.* at 622, 710 *A.*2d 1050. *Ryan* is distinguishable because it involved the theft of a third party's automobile.

> When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally to the end that coverage is afforded "to the full extent that any fair interpretation will allow."
>
> [*Id.* at 482, 170 *A.2d* 22 (citations omitted).]

More recently, in *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 495 *A.*2d 406 (1985), Justice Stein explained a rationale behind the enforceability of an insured's reasonable expectations:

> The interpretation of insurance contracts to accord with the reasonable expectations of the insured, regardless of the existence of any ambiguity in the policy, constitutes judicial recognition of the unique nature of contracts of insurance. By traditional standards of contract law, the consent of both parties, based on an informed understanding of the terms and conditions of the contract is rarely present in insurance contracts. Because understanding is lacking, the consent necessary to sustain traditional contracts cannot be presumed to exist in most contracts of insurance. Such consent can be inferred only to the extent that the policy language conforms to public expectations and commercially reasonable standards. In instances in which the insurance contract is inconsistent with public expectations and commercially accepted standards, judicial regulation of insurance contracts is essential in order to prevent overreaching and injustice.
>
> [*Id.* at 338–39, 495 *A.*2d 406 (citations omitted).]

*See also Lehrhoff v. Aetna Casualty and Sur. Co.,* 271 *N.J.Super.* 340, 347, 638 *A.*2d 889 (App.Div.1994) (stating that a "corollary of the reasonable-expectation doctrine, at least in respect of the consumer market, is that reasonable expectations will, in appropriate circumstance, prevail over policy language to the contrary").

The liability element of a family automobile policy protects the family treasury from the costs of defending a claim and the expense of satisfying a judgment. The present case involves an alleged "family member" using a covered automobile. Typically, the issue arises when a child of the named insured, frequently underage and unlicensed, operates a family vehicle without permission, or even in the face of an express prohibition. That was the case in *St. Paul, supra.* In the event of an accident and coverage disclaimer based on the absence of permission or reasonably believed entitlement, the child will be left without a defense to the personal injury claim unless the parent pays for it. In the event of an adverse result, the child will begin his adult life as a

judgment debtor, unless the parent satisfies the judgment. We are persuaded, therefore, that a reasonable expectation of an insured is that family members will be protected when operating a covered family vehicle even in the absence of permission, the family member's disobedience being a family matter to be dealt with internally.

The present case presents a test of the hypothesis. If Exclusion A.8 applies literally to "any person," then James' wife Doris would not be covered if she drove James' prized Lincoln without his permission. In that event, the marital assets would be at risk. Does that comply with the insured's reasonable expectations? We don't think so, and neither did the late Chief Justice Weintraub. In his dissenting opinion in *Baesler, supra,* the Chief Justice posed the following hypothetical and his response to it:

> Or suppose the named insured, for the purpose of disciplining his erring son . . . denies him the use of the car for 30 days or during certain hours of the day. I think it would be absurd to hold the son who violated the prohibition was beyond the protection of the policy. That is the last thought the father would have had in mind. In brief the named insured may deny or restrict 'permission' for reasons wholly foreign to insurance coverage and with no intention whatever to deny the policy protection he bought. The carrier should not be permitted to make capital of such privately motivated actions.
>
> [33 *N.J.* at 157–58, 162 *A.*2d 854 (Weintraub, C.J., dissenting).]

The Supreme Court overruled *Baesler* in *Odolecki, supra,* 55 *N.J.* at 550, 264 *A.*2d 38, adopting Chief Justice Weintraub's view regarding the initial permission rule at issue in that case.

Against the background of an insured's reasonable expectations, let us examine the policy's structure. Our first observation is that it creates two classes of insureds. The first class, B.1, consists of the named insured, his spouse, "if a resident of the same household," and family members who are residents of the named insured's household. The second class of insureds, B.2, consists of "any person using" the covered auto. If a family member does not occupy a special position with regard to the coverage of this policy, then there is no reason to include a family member in the first class of insureds. That is because a family member would be included as a B.2 insured, *i.e.,* any person using the covered auto.

Our second observation is that Exclusion A.8 uses the same language as B.2; it excludes coverage for "any person."

The dissent relies, in part, on Exclusion A.6 because that exclusion, by its terms, specifies that it does not apply to "family members." The dissent's reference to A.6 is a valid tool of contract construction used by lawyers and judges, but probably not by a typical insured untrained in legal method. Reliance on Exclusion A.6 does not, however, preclude ambiguity; the need to resort to it suggests the existence of ambiguity. Moreover, A.6 may lead a lay person to believe that "any person" does not always include "family members."

In light of the reasonable expectations of an insured, the dual-class of defined insureds, and language in the A.8 exclusion mimicking the B.2 definition of an insured, we conclude that the policy is ambiguous.[3] Other jurisdictions have held that the coverage exclusion applicable to "any person" operating without a reasonable belief in entitlement does not apply to a covered "family member" using a covered automobile. Those cases found ambiguity in their policies' creation of two distinct classes, "family members" and "any person." *See Meridian Mut. Ins. Co. v. Cox*, 541 *N.E.*2d 959, 962 (Ind.Ct.App.1989) (holding that "any person" exclusion did not preclude coverage of a family member, insureds' son, who took vehicle without permission because "the creation of different classes by distinguishing between descriptive terms can create an ambiguity ... even though the words, by themselves, are not ambiguous."); *accord American States Ins. Co. v. Adair Indus., Inc.*, 576 *N.E.*2d 1272 (Ind.Ct.App.1991); *Hartford Ins. Co. v. Jackson*, 206 *Ill.App.*3d 465, 151 *Ill.Dec.* 451, 564 *N.E.*2d 906 (1990); *Economy Fire & Casualty Co. v. Kubik*, 142 *Ill.App.*3d

---

[3] The section A. exclusions have nine numbered subparagraphs, all applicable to "any person" unless specifically limited. We do not suggest that "any person" may never include the named insured, a spouse or a family member. For example, A.1 excludes coverage for "any person who intentionally causes" harm. Although the issue is not before us, it is likely in such a context that "any person" would apply literally to B.1 insureds.

906, 97 *Ill.Dec.* 68, 492 *N.E.*2d 504 (1986); *see also Paychex, Inc. v. Covenant Ins. Co.,* 156 *A.D.*2d 936, 549 *N.Y.S.*2d 237 (1989).

Consistent with this court's decision in *St. Paul,* some jurisdictions have applied the "any person" exclusion to family members. *See* Annotation, *Application of Automobile Insurance "Entitlement" Exclusion to Family Member,* 25 *A.L.R.* 5th 60, 72–77 (1994).

Having determined that Exclusion A.8 is contextually ambiguous, we would resolve the ambiguity in favor of coverage, *i.e.,* the non-applicability of the A.8 exclusion to a "family member," if Joseph qualified as a "family member" when Rhonda was killed.

This analysis also promotes a major public interest in the interpretation of liability policies, the compensation of innocent victims. *Odolecki, supra,* 55 *N.J.* at 549, 264 *A.*2d 38; *Property Casualty Co. v. Conway,* 284 *N.J.Super.* 622, 627, 666 *A.*2d 182 (App.Div.1995), *aff'd,* 147 *N.J.* 322, 687 *A.*2d 729 (1997).

We reverse and remand for further proceedings consistent with this opinion, including a determination regarding Joseph's status as a "family member."

A.A. RODRIGUEZ, J.A.D., dissenting.

I dissent from the majority's decision to reverse and remand for factfinding, "including a determination regarding Joseph's status as a 'family member.'" I would affirm.

The majority concludes that, "[t]he major flaw in the court's determination, however, is the absence of any consideration regarding the reasonableness of Rhonda's belief that she was entitled to use the [Camry]." I disagree that the judge did not consider that issue.

The judge issued a written opinion finding that neither Joseph nor Rhonda had a "reasonable belief that [they were] entitled to use" the Camry. The judge began his opinion by stating, "the principal issue to be determined herein is whether Joseph Collins and/or Rhonda Collins his wife, had permission to drive the

Camry." The judge then discussed whether Joseph had a reasonable basis to believe that he had permission to drive the Camry. The judge expressly found that Joseph did not. In doing so the judge credited and cited the testimony of Doris that "nobody will *ever* drive any of my cars *ever*." The judge also found, "the only time permission to drive a Spataro vehicle was asked, it was denied in no uncertain terms." This was a reference to an occasion when Rhonda asked James for permission to drive his Lincoln to Trenton and was denied.[1]

I must emphasize that whether or not Joseph or Rhonda had a reasonable belief that they had permission to use the Camry is a factual determination. The judge resolved that factual dispute by finding that neither Joseph nor Rhonda had reason to believe they could drive the Camry. Although the judge made an express finding as to Joseph, it is implicit from the testimony that the judge accepted as credible that neither James nor Doris had given permission to Rhonda to drive the Spataro vehicles. Because the judge's finding is supported by the proofs, it is binding on us. *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974).

I also disagree with the majority's decision not to follow the holding in *St. Paul Ins. v. Rutgers Cas. Ins.*, 232 *N.J.Super.* 582, 557 *A.*2d 1052 (App.Div.1989). In *St. Paul*, another panel of this court held that clause A.8 applies to *any person* using the vehicle without permission including a family member because, "[o]f all the exclusions enumerated, [in Exclusion A], only paragraph 6 explicitly states that it does not apply to the named insured or any family member." Thus, "[t]he exclusion at issue here is plain and unambiguous." *Id.* at 586, 557 *A.*2d 1052. *See also Ryan v. LCS, Inc.*, 311 *N.J.Super.* 618, 710 *A.*2d 1050 (App.Div. 1998), *State Farm Mutual Auto. Ins. Co. v. Zurich Am. Ins. Co.*, 62 *N.J.* 155,

---

[1] The judge cited to "transcript 85," however there is no such transcript page number. The transcript of March 19, 1996 at page 11, lines 19 to 24 refers to Doris' testimony regarding Rhonda's request.

299 *A*.2d 704 (1973); *Campbell v. New Jersey Auto. Ins.*, 270 *N.J.Super.* 379, 637 *A*.2d 226 (App.Div.1994) (upholding the identical exclusion when applying it to deny coverage when a vehicle was stolen and ultimately involved in an accident injuring a victim).

Moreover, an analysis of the policy language reveals no ambiguity. Exclusion A.8. reads:

A. We do not provide Liability Coverage for *any person* (emphasis added):

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

"*Any person* is not defined by the policy. In the absence of a definition in a policy, a term must be given its plain, ordinary and popular meaning." *Daus v. Marble*, 270 *N.J.Super.* 241, 251, 636 *A*.2d 1091 (App.Div.1994). Where there is no ambiguity, a strained or distorted construction will not be applied. *Yannuzzi v. U.S. Casualty Co.*, 32 *N.J.Super.* 373, 377, 108 *A*.2d 489 (App.Div. 1954), reversed on other grounds 19 *N.J.* 201, 115 *A*.2d 557 (1955). In fact, when the language of a provision is clear, rules of construction cannot be applied to disregard an exclusion. We find no ambiguity in the language of the A.8. exclusion. *Last v. West American Ins. Co.*, 139 *N.J.Super.* 456, 460, 354 *A*.2d 364 (App. Div.1976).

In addition to the language we look to the design and purpose of the policy. Any exclusion must be examined and interpreted in light of its own design and intent as well as in view of objects and purposes of the policy as a whole. *Capece v. Allstate Ins. Co.*, 88 *N.J.Super.* 535, 541, 212 *A*.2d 863 (Law Div.1965). There are nine exclusions in Exclusion section A of the Exclusions to Liability Coverage of the Rutgers policy. By the express language of the introductory sentence, this group of exclusions applies to "any person." I find no support for the proposition that "any person" excludes family members. Exclusion A.6. expressly excludes family members, among others, from the full exclusion otherwise

applicable to any person.[2]  If family members were not subject to the exclusion because they are not any person, then it would be unnecessary to expressly note they are not subject to Exclusion A.6.  By implication we may conclude that family members are included in "any person" for purposes of Exclusion A.8.

I would therefore affirm the judgment in favor of Rutgers.

---

[2] This exclusion states that there is no coverage, with regard to any person:
While employed or otherwise engaged in the "business" of:
a.   selling;
b.   repairing;
c.   servicing;
d.   storing; or
e.   parking;
vehicles … This exclusion (A.6) does not apply to the ownership, maintenance or use of 'your covered auto' by:
a.   you;
b.   any "family member;" or
c.   any partner …