730 A.2d 833

RUTGERS CASUALTY INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. JOSEPH E. COLLINS, DEFENDANT–RESPONDENT.

EDWARD G. IOVINO, AS ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF RHONDA COLLINS, DECEASED, PLAINTIFF–RESPONDENT, v. RUTGERS CASUALTY INSURANCE COMPANY AND JAMES SPATARO, DEFENDANTS–APPELLANTS, AND JOSEPH E. COLLINS, DEFENDANT–RESPONDENT.

Argued March 29, 1999—Decided June 18, 1999.

*Edward H. Lee,* argued the cause for appellant James Spataro (*Pitman, Pitman, Mindas and Lee,* attorneys).

*Susan L. Moreinis,* argued the cause for appellant Rutgers Casualty Insurance Company.

*James M. Nardelli,* argued the cause for respondent Edward G. Iovino (*Parsons & Nardelli,* attorneys).

*Alison L. Newman,* on behalf of respondent Joseph E. Collins, submitted a letter in lieu of brief joining in the brief submitted by respondent Edward G. Iovino (*King, Kitrick, Jackson & Troncone,* attorneys).

PER CURIAM.

This appeal concerns liability coverage under an automobile insurance policy. The facts of the case are set forth in the reported opinion of the Appellate Division, 313 *N.J.Super.* 79, 712 A.2d 709 (1998). We repeat only the facts necessary to our disposition.

Twenty-nine-year-old Joseph Collins had planned to attend a concert with his wife, Rhonda. When they realized that their car had bad brakes, the couple decided to go to the home of Joseph's mother to borrow a car owned by Joseph's stepfather, James Spataro, and used principally by Joseph's mother, Doris Spataro. The car was insured by Rutgers Casualty Insurance Company (Rutgers). When the Collinses arrived, the Spataros were not home. Joseph, however, found the keys to the car, a Toyota Camry, in the Spataros' bedroom and gave them to Rhonda. The Collinses then departed from the Spataros' residence for the home of Joseph's cousin, Paul Spataro. Rhonda drove the Spataros' car while Joseph drove the car with bad brakes, even though his license had been revoked. Upon arriving, they decided to leave the car with the bad brakes at the cousin's house. After Rhonda gave Joseph the keys to the Camry, Joseph drove the couple to the house of Rhonda's brother, Vincent Iovino. They took other means of transportation from the Iovino home to the concert. After the concert, the Collinses decided that Joseph would drive the Camry because Rhonda was too tired. During the ride home,

the Collinses were in a one-car accident in which Rhonda, who had fallen asleep in the back seat, was killed.

The Estate of Rhonda Collins (the Estate) filed suit claiming compensation for damages arising out of the accident. Rutgers and the Estate each filed declaratory judgment actions seeking a determination of coverage available under the Rutgers policy. The three actions were consolidated.

The liability provision of the policy states in relevant part:

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.

. . . .

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto. . . .

2. Any person using "your covered auto."

A provision of the policy, A.8, excludes from liability coverage any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." The unrelated A.6 exclusion of those engaged in an auto-related business, however, specifically excepts the insured or any "family member" from being deprived of coverage.

At trial, the testimony differed concerning whether Rhonda or Joseph had permission to drive any of the Spataros' vehicles. In its opinion, the trial court initially asserted that the "principal issue to be determined herein is whether Joseph Collins and/or Rhonda Collins his wife, had permission to drive the Camry of Doris and James Spataro ... [on the day of the accident.]" Although the court framed the issue in terms of permission, it stated that under the test set forth in *St. Paul Insurance Co. v. Rutgers Casualty Insurance Co.*, 232 *N.J.Super.* 582, 557 *A.2d* 1052 (App.Div.1989), the "question is whether the person using the vehicle, (here Joseph) has a 'reasonable belief['] that (he) was entitled to do so."

The trial court concluded that Joseph had "no reasonable belief that he was entitled to use the vehicle either on his own or by giving the car to his wife who later 'allowed' him to drive." Consequently, the court entered judgment in favor of Rutgers.

A divided panel of the Appellate Division reversed the judgment of the trial court and remanded for further fact-finding concerning whether Rhonda had a reasonable belief that she was entitled to use the Camry and whether Joseph could be considered a family member. According to the majority, if Rhonda had a reasonable belief that she had permission to use the car, Joseph would be covered under that initial permission (assuming he were a family member). The court also found that the A.8 exclusion for "any person" who did not have permission to drive the car was inapplicable to family members. The court explained that "a reasonable expectation of an insured is that family members will be protected when operating a covered family vehicle even in the absence of permission, the family member's disobedience being a family matter to be dealt with internally." 313 *N.J.Super.* at 89, 712 *A.*2d 709. The dissent found that the trial court had already made the factual determination that neither Joseph nor Rhonda had a reasonable belief that either was permitted to use the car. The dissent also held that the A.8 exclusion, which precludes coverage for "any person" operating a vehicle without a reasonable belief that he or she had the owner's permission, does apply to family members. Rutgers appealed as of right. *R.* 2:2–1(a)(2).

We affirm in part and reverse in part the judgment of the Appellate Division. We employ somewhat different reasoning.

## I

We disagree that the "reasonable belief" standard should govern Rhonda's entitlement to coverage. As explained in *State Farm Mutual Automobile Insurance Co. v. Zurich American Insurance Co.,* 62 *N.J.* 155, 169, 299 *A.*2d 704 (1973), the "reasonable belief" language in an insurance policy was originally designed to place an outer limit on those circumstances in which an

automobile liability insurance policy provides coverage to an insured for nonowned vehicles. That language was intended to have a broader scope than "with permission" language.

Rhonda's entitlement to coverage arises from the omnibus clause of the policy required by *N.J.S.A.* 39:6B–1.[1] Although 39:6B–1 contains no limitation on coverage based on permitted use, the provision has been understood to have replaced *N.J.S.A.* 39:6–46, which was repealed by *L.* 1979, *c.* 169, § 5, and which contained "express and implied consent" language. *Scott v. Salerno,* 297 *N.J.Super.* 437, 445, 688 *A.2d* 614 (App.Div.), *certif. denied,* 149 *N.J.* 409, 694 *A.2d* 194 (1997); *Parkway Iron & Metal Co. v. New Jersey Mfrs. Ins. Co.,* 266 *N.J.Super.* 386, 389, 629 *A.2d* 1352 (App.Div.1993), *certif. denied,* 135 *N.J.* 302, 639 *A.2d* 301 (1994). *N.J.S.A.* 39:6A–4 requires that an automobile liability insurance policy provide personal injury protection (PIP) for any person using the insured vehicle "with permission of the named insured." Although the Spataros' policy is susceptible to a contrary interpretation, we believe that the fair interpretation of the policy is that coverage for an initial permittee such as Rhonda should be governed by the "with permission" standard given the breadth of New Jersey's initial-permission rule, *see Matits v. Nationwide Mut. Ins. Co.,* 33 *N.J.* 488, 496–97, 166 *A.2d* 345 (1960), and given that Rhonda's coverage under the policy was intended to comply with the statutory mandate.

█ The trial court made no finding concerning whether Rhonda had permission to use the Spataros' vehicle. Thus, the initial question is whether Rhonda's use of the vehicle was "with permis-

---

[1] *N.J.S.A.* 39:6B–1(a) states:

Every owner or registered owner of a motor vehicle registered or principally garaged in the State shall maintain motor vehicle liability insurance coverage, under provisions approved by the Commissioner of Banking and Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle....

sion," either expressed or implied.   Generally, implied permission is

> "an inferential permission, in which a presumption is raised from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent."

> . . . .

> [I]t is "actual permission circumstantially proven". . . .   The essence of the concept is that from all the surrounding circumstances a fact-finder could reasonably conclude that the use by the putative permittee was not contrary to the intent or will of the alleged permitter.
>
> [*Zurich, supra,* 62 *N.J.* at 167–68, 299 *A.*2d 704 (citations omitted).]

██  Once established that "the first user [Rhonda] in fact ha[d] permission from the named insured, lack of permission, whether express or implied, of such named insured for use by a later permittee is irrelevant to coverage, short of theft, or the like." *Tooker v. Hartford Acc. and Indem. Co.,* 128 *N.J.Super.* 217, 221– 22, 319 *A.*2d 743 (App.Div.1974)(citing *Odolecki v. Hartford Acc. & Indem. Co.,* 55 *N.J.* 542, 550, 264 *A.*2d 38 (1970)); *Zurich, supra,* 62 *N.J.* at 174, 299 *A.*2d 704, *appeal after remand,* 136 *N.J.Super.* 572, 347 *A.*2d 371 (1975), *certif. denied,* 70 *N.J.* 137, 358 *A.*2d 184 (1976).   Thus, if the trial court were to conclude that Rhonda had initial permission to drive the Spataros' vehicle, coverage should be afforded by Rutgers.   However,

> before permission can be said to flow from the owner or named insured to the third-person-driver through the alleged initial permittee the latter must be found from the circumstances to have assumed charge or dominion over the car pursuant to the owner's permission and to have remained in that relationship to the vehicle while allowing the third person to drive it.   If those facts are found, the driver is covered by the policy.
>
> [*Zurich, supra,* 62 *N.J.* at 174–75, 299 *A.*2d 704.]

## II

██  The second issue concerns whether the policy exclusion in section A.8 applies to family members, given the history of the "reasonable belief" clause.   *Id.* at 169–72, 299 *A.*2d 704.   We believe that the Appellate Division dissenter correctly concluded that the A.8 exclusion should apply to a "family member," al-

though generally exclusions must be broadly interpreted to afford coverage to family members. The proper test for measuring whether the belief was reasonable is "the reaction of a reasonable [person] of [Joseph's] age, personality and social milieu, subject to such attendant influences on his judgment and mind as may be credibly discerned from the proofs." *Id.* at 171–72, 299 *A.2d* 704 (citing *Bucuk v. Edward A. Zusi Brass Foundry,* 49 *N.J.Super.* 187, 211, 139 *A.2d* 436 (App.Div.), *certif. denied,* 27 *N.J.* 398, 143 *A.2d* 9 (1958)).

Justice Mountain described the concept thus:

[T]he policy describing coverage as to non-owned vehicles is broader than that of the omnibus clause.... [W]hether a driver reasonably believes he has permission to operate a particular automobile depends upon the driver's subjective state of mind, examined in light of his social milieu and affected, doubtless, by the mores of a peer group with whom he associates.

[*Zurich, supra,* 62 *N.J.* at 183, 299 *A.2d* 704 (Mountain, J., concurring in part and dissenting in part).]

We thus held in *Ryan v. LCS, Inc.,* 311 *N.J.Super.* 618, 710 *A.2d* 1050 (App.Div.1998), *aff'd o.b.,* 157 *N.J.* 251, 723 *A.2d* 975 (1999), that a family member of the policy holder who operated a non-family car that he had stolen could not have had a reasonable belief that he was operating that car with the owner's permission.

Before exploring Joseph's reasonable belief, a threshold question in this case is whether he was a family member. Because of marital problems, Joseph had been living intermittently with the Spataros before the accident. The policy defines "family member" as a "person related to you by blood, marriage or adoption who is a resident of your household...." The Appellate Division remanded that issue to the trial court.

██ Because we conclude that the trial court's finding that Joseph could not have reasonably believed that he had permission to operate the Spataro's car was based on substantial evidence in the record, we do not reach the issue of whether Joseph was a family member. Although the trial court did not articulate its use of the broader "reasonable belief" standard for coverage applicable to family members, we are satisfied it took into account both

the objective and subjective aspects of the test in concluding that a person of Joseph's age and social setting (whose license had been suspended for nine years) could not reasonably have believed that the Spataros would have given him permission to operate their car.

Because the trial court made no findings concerning whether Rhonda had initial permission, express or implied, to use the car, we agree that that issue should be remanded. Without specifically naming the person to whom the trial court was referring, the court concluded that "[t]his is not a case where initial permission is granted, and then the borrower 'extends' beyond the scope of permission," and that "[t]he only time permission to drive a Spataro vehicle was asked, it was denied in no uncertain terms." The question is whether the use of the Spataros' car by their daughter-in-law Rhonda, occasioned by the defective brakes on the Collins' car, would have been "contrary to the intent or will" of the Spataros. *Zurich, supra,* 62 *N.J.* at 168, 299 *A.*2d 704.

In sum, if Rhonda had initial permission to use the car, Joseph's reasonable belief becomes irrelevant; however, if Rhonda did not have permission to use the car, Joseph, if he was a family member, would not be covered because he could not have had a reasonable belief that he had permission to drive the car.

Accordingly, the judgment of the Appellate Division is affirmed in part and reversed in part. The matter is remanded to the Law Division to determine whether Rhonda had express or implied permission to drive the vehicle. We leave to the trial court the determination of whether supplementation of the record is necessary.

HANDLER and STEIN, JJ., concurring in part and dissenting in part.

We would agree with Part I of the majority opinion but disagree that the A.8 exclusion applies to family members. We would remand to determine if Joseph Collins was a family member within the meaning of the policy.

*For affirmance in part; reversal in part; remandment*—Chief Justice PORITZ and Justices POLLOCK, O'HERN, GARIBALDI and COLEMAN—5.

*Concurs in part; dissents in part*—Justices HANDLER and STEIN—2.